# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STEVEN NOVIA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**MOBIZ INC.**<br>**AND**<br>**HARRIS BROTHERS**<br>**OF MICHIGAN, INC.**<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Steven Novia ("Plaintiff" or "Mr. Novia") brings this Class Action Complaint and Demand for Jury Trial against Defendant Mobiz Inc. and Harris Brothers of Michigan, Inc. and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that MoBiz and Harris Brothers violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, as well as by failing to include the required caller ID information.

**PARTIES**

4. Plaintiff Steven Novia is an individual residing in the District of Massachusetts.

5. Defendant Mobiz Inc. is a corporation that sends marketing text messages with its headquarters and principal place of business in Georgia.

6. Defendant Harris Brothers of Michigan, Inc. is a Michigan corporation which owns the Harris Brothers Auction House in Byron, Michigan.

**JURISDICTION AND VENUE**

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has specific personal jurisdiction over Defendant Harris Brothers because it contracted with MoBiz to send text messages into this District and knowingly directed the sending of text messages into this District. This Court has specific personal jurisdiction over MoBiz because it actually sent the text messages at issue into this District, including to a number with a Massachusetts area code.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the claims at issue here, the receipt of illegal text messages, arise in and was orchestrated from Michigan.

**BACKGROUND**

**A. The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

14. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

15. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

16. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

17. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated text messages at issue.

19. Plaintiff's telephone number, 617-418-XXXX, is a residential, non-commercial telephone number.

20. Mr. Novia uses the number for personal, residential, and household reasons.

21. Mr. Novia does not use the number for business reasons or business use.

22. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

23. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than 31 days prior to the text messages at issue.

24. Plaintiff has never been a customer of MoBiz or Harris Brothers and never consented to receive calls or text messages from MoBiz or Harris Brothers.

25. Despite that fact, in at least February and March of 2025, the Plaintiff received at least four text messages from the Defendants from the number 810-208-1763.

26. Upon information and belief, Defendant MoBiz owns this telephone number.

27. The text messages all came from the foregoing number. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer or company whose services were promoted. The results of those dips are as follows:

| Number | Date | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|---|
| 810-208-1763 | 14/02/2025 | Y | FENTON MI | ONVOY |
| 810-208-1763 | 07/03/2025 | Y | FENTON MI | ONVOY |
| 810-208-1763 | ??? | Y | FENTON MI | ONVOY |
| 810-208-1763 | ??? | Y | FENTON MI | ONVOY |

28. As the aforementioned chart shows, the CNAM transmitted by the Defendants' ultimate telephone carrier, Onvoy, provided CNAM functionality, but the CNAM functionality transmitted a geographic location and not Defendant Harris Brother's name or telemarketer's name.

29. Onvoy provides its customers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, Onvoy's default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number.

30. The messages were sent to solicit the Plaintiff to participate in various of Harris Brothers's auctions, as reflected by the following screenshots:



31. Each link redirects the individual to Defendant Harris Brothers's website.

32. All the calls and text messages were sent to attempt to sell and promote the Plaintiff the Defendant Harris Brothers's auctions and the goods auctioned there.

33. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

34. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

35. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

36. The FCC has instructed that sellers such as Harris Brothers may not avoid liability by outsourcing telemarketing to third parties, such as MoBiz:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

37. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

38. Harris Brothers is liable for telemarketing calls placed by MoBiz and transferred or sold to Harris Brothers and its agents to generate customers for Harris Brothers and its agents, including the Plaintiff.

39. Indeed, Harris Brothers's relationship with Defendant MoBiz contains numerous hallmarks of agency.

40. For example, the text messages advertise Harris Brothers's goods and services, and direct those who click on the links to Harris Brothers's website.

7

41. Harris Brothers could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by refraining from using lead generators and text message marketing services like MoBiz, but it did not.

42. Harris Brothers was interested in selling its products and services via text message marketing, so it turned to text message marketers like MoBiz that could sent text messages *en masse* to advertise its goods and services.

43. To do so, Harris Brothers hired MoBiz to orchestrate an *en masse* text message telemarketing campaign.

44. Harris Brothers controlled the day-to-day activities of MoBiz by providing the specific criteria and demographics of individuals it desired to target and required MoBiz to adhere to those criteria, including drafting and providing MoBiz the actual message content.

45. Defendants continued to market to Plaintiff, despite Plaintiff's telephone number being on the National Do Not Call Registry.

46. As such, Harris Brothers controlled the content of MoBiz's telemarketing.

47. Finally, Harris Brothers could have terminated MoBiz.

48. It did not.

49. By virtue of hiring MoBiz to conduct a text message marketing campaign showcasing its drafted ads and featured auctions, drafting the very messages themselves, and directing the conduct and other indicia of the calls at issue described above, Harris Brothers directed MoBiz and the content of the communications that MoBiz would use in its marketing.

50. A reasonable seller like Harris Brothers whose telemarketers and agents are sending messages would investigate into the reasons why their vendors are sending messages to numbers on the Do Not Call Registry that never visited their establishment as an initial matter.

51. Indeed, Harris Brothers could have investigated if the customers or web link clicks it received were genuine or if they were on the National Do Not Call Registry.

52. It did not.

53. Harris Brothers hired MoBiz without a proper investigation and did not terminate them.

54. As such, they knowingly ratified MoBiz's conduct.

55. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

56. The calls were unwanted.

57. The calls were nonconsensual encounters.

58. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

59. Plaintiff never provided his consent or requested the calls.

60. Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, battery life, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

61. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

9

62. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants encouraging the purchase of Harris Brothers's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) encouraging the purchase of Harris Brothers's goods or services, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (5) within the four years prior to the filing of the Complaint.

63. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

64. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

65. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict

with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b. whether Defendants transmitted CPN or ANI and their names in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

c. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

d. the corresponding degree of liability as between Defendants, and;

e. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

67. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each Class, such that joinder of all members is impracticable.

68. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

69. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or his telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

71. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or his telephone numbers on the National Do Not Call Registry.

72. These violations were willful or knowing.

73. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

74. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

75. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

77. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

78. These violations were willful or knowing.

79. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

80. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully request that the Court enter judgment against Defendants for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Telemarketing Caller ID Class as alleged herein;

C. Appointment of Plaintiff as representative of the Classes;

D. Appointment of the undersigned as counsel for the Classes;

E. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

F. Injunctive relief for the Classes, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry or from transmitting future calls without including the name of the telemarketer;

G. Attorneys' fees and costs, as permitted by law; and

H. Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED this 19th day of April, 2025.

By: */s/ Anthony I. Paronich*
    Anthony I. Paronich
    anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 738-7080
    Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Classes*