# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated, | |
| Plaintiff | Civil Action No. 1:25-cv-11036-AK |
| v. | |
| MOBIZ INC.; HARRIS BROTHERS OF MICHIGAN, INC., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT MOBIZ INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .............................................................................................................. 1

ARGUMENT .................................................................................................................. 4

    I.    The Complaint Fails to State a Plausible Claim for Relief ........................................ 4

        A.    Count I Fails Because the Complaint Lacks Factual Allegations Plausibly Supporting Plaintiff's Assertion that Mobiz "Initiated" Text Messages ........................... 5

        B.    Count II Fails Because it Seeks to Enforce a Regulation for Which There is No Private Right of Action .................................................................................................. 8

    II.    Plaintiff Lacks Standing to Pursue Count II ........................................................... 12

CONCLUSION ............................................................................................................... 15

i

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*Adzhikosyan v. Callfire, Inc.,*
No. CV 19-246 PSG (GJSx), 2019 WL 7856759 (C.D. Cal. Nov. 20,
2019) ............................................................................................................6, 7, 8

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..........................................................................................8, 9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................4

*Bishay v. Ricciuti,*
575 F. Supp. 3d 262 (D. Mass. 2021) ..............................................................4, 5

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988)..............................................................................................8

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006)............................................................................................13

*Dobronski v. Selectquote Ins. Servs.,*
No. 2:23-CV-12597, 2025 WL 900439 (E.D. Mich. Mar. 25, 2025)..........11, 12

*Dobronski v. Selectquote Ins. Servs.,*
462 F. Supp. 3d 784 (E.D. Mich. 2020)............................................................11

*Fla. Audubon Soc. v. Bentsen,*
94 F.3d 658 (D.C. Cir. 1996) (en banc) ............................................................15

*Frank v. Cannabis & Glass, LLC,*
No. 2:19-CV-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ....6, 7

*Griffin v. American-Amicable Life Ins. Co. of Tex.,*
No. 6:24-CV-00243- MC, 2024 WL 4333373 (D. Ore. Sept. 27, 2024)..........11

*Hochendoner v. Genzyme Corp.,*
823 F.3d 724 (1st Cir. 2016) ..............................................................................13

*In the Matter of Affordable Enters. of Arizona, LLC.,*
35 F.C.C. Rcd. 12142 (2020)................................................................................9

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,*
    28 F.C.C. Rcd. 6574 (2013) ...................................................................5

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,*
    30 F.C.C. Rcd. 7961 (2015) .............................................................5, 6

*Kramer v. Autobytel, Inc.,*
    759 F. Supp. 2d 1165 (N.D. Cal. 2010) ...............................................11

*Lewis v. Casey,*
    518 U.S. 343 (1996) .............................................................................13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .............................................................................13

*Maloy v. Ballori-Lage,*
    744 F.3d 250 (1st Cir. 2014) ................................................................4

*McDermet v. DirecTV, LLC,*
    No. CV 19-11322-FDS, 2021 WL 217336 (D. Mass. 2021) ..............11

*Meeks v. Buffalo Wild Wings, Inc.,*
    No. 17-CV-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ............7

*Meyer v. Cap. All. Grp.,*
    No. 15-CV-2405-WVG,, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ............11

*Morales-Cruz v. Univ. of Puerto Rico,*
    676 F.3d 220 (1st Cir. 2012) ................................................................4

*Pagán v. Calderón,*
    448 F.3d 16 (1st Cir. 2006) .................................................................13

*Piper v. Talbots, Inc.,*
    507 F. Supp. 3d 339 (D. Mass. 2020) ..................................................2

*Shank v. Givesurance Ins. Servs., Inc.,*
    No. 3:19-CV-136, 2022 WL 561596 (S.D. Ohio, Feb. 24, 2022) ......11

*Sheski v. Shopify (USA) Inc.,*
    No. 19-CV-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13, 2020) ............6, 7

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...................................................................1, 13, 15

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016) ............................................................14

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................13

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979) .......................................................................................9, 12

*United States v. AVX Corp.*,
    962 F.2d 108 (1st Cir. 1992) ......................................................................12, 13

*Worsham v. Travel Options, Inc.*,
    No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016) ............10, 11, 12

## STATUTES, RULES, AND REGULATIONS

47 U.S.C. § 227 ................................................................................................ *passim*

Federal Rule of Civil Procedure 12 ................................................................4, 12

47 C.F.R. § 64.1200 .......................................................................................2, 5, 8

47 C.F.R. § 64.1601 ........................................................................................ *passim*

68 Fed. Reg. 44144-01 (2003) ..............................................................................9

## PRELIMINARY STATEMENT

In his lead claim, Plaintiff Steven Novia attempts to contort provisions of the Telephone Consumer Protection Act (the "TCPA") that govern the "initiat[ion]" of text message solicitations into a mechanism to hold bystanders liable. More specifically, Plaintiff attempts to hold Mobiz Inc. ("Mobiz") responsible for text messages written and sent by Harris Brothers of Michigan, Inc. ("Harris Brothers") because Harris Brothers did so through Mobiz's platform. Even if Plaintiff has stated a claim against Harris Brothers, he has not stated a claim against Mobiz. As many courts have held, stating a claim against a platform provider like Mobiz requires factual allegations showing its involvement in decision making, such as decisions regarding who to message, what to say, and when. There are no allegations anywhere in the Complaint that plausibly show Mobiz had any such involvement in the text messages Harris Brothers sent Plaintiff.

In his second claim, Plaintiff impermissibly attempts to recover statutory penalties for an alleged violation of a technical requirement in an FCC Rule for which there is no private right of action. And even if there were, Plaintiff suffered no injury from the purported violation. As the Supreme Court held in *Spokeo, Inc. v. Robins*, "bare procedural violation[s]" of agency regulations without a concrete and particularized injury are not enough to confer standing. 578 U.S. 330, 341 (2016). Without standing, Plaintiff's claim must be dismissed for lack of subject matter jurisdiction.

For these reasons, the Court should dismiss all claims asserted against Mobiz.

## BACKGROUND

The TCPA, 47 U.S.C. § 227, is a complex statutory and regulatory scheme that governs telemarketing calls. Parts of the statute aim to protect consumers from unwanted calls, including a provision providing for the establishment of a National Do Not Call Registry (the "DNC

Registry"). *Id.* § 227(c)(3); 47 C.F.R. § 64.1200(c)(2). Other parts of the statute establish "[t]echnical and procedural standards" with which entities must comply, 47 U.S.C. § 227(d), such as the transmission of caller identification ("Caller ID") information. 47 C.F.R. § 64.1601(e). While some parts of the statute allow for private plaintiff enforcement, other parts do not and can be enforced only by the Federal Communications Commission or state Attorneys General. 47 U.S.C. §§ 227(g)(1), (7).

Mobiz is a company that has developed a suite of marketing tools to help its customers, who are mostly small businesses, expand their reach. Relevant here, Mobiz provides its customers with a platform through which those customers can create, and then send, text messages to their own customers and potential customers. Under Mobiz's terms of service that have been in place since before the text messages at issue here, Mobiz's customers are responsible for complying with applicable laws, including the TCPA, and guaranteeing that the recipients of their messages have opted-in to receive messages from the customer. *See* Mobiz Terms and Conditions of Use § 7 (End User Consent and Opt-In Guarantees), available at https://www.getmobiz.com/terms-and-conditions-of-use and attached as Exhibit A to the Declaration of John J. Butts.[1]

As alleged in the Complaint, Harris Brothers used Mobiz's platform to market its auctions. Compl., Doc. No. 1, ¶ 44. In particular, Plaintiff alleges that Harris Brothers drafted text messages and determined which consumers to send them to. *Id.* ¶ 49. It also "controlled the day-to-day activities of Mobiz." *Id.* ¶ 44; *see also id.* ¶ 49.

---

[1]     Information on Mobiz's website can be considered on this motion because it is subject to judicial notice as something publicly accessible that is readily verified through an internet search. *See Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) (taking judicial notice of the information contained in printouts of two corporations' public websites).

Plaintiff claims to have received four text messages earlier this year from Harris Brothers that promoted Harris Brothers's auctions.  Screenshots of those messages are reproduced in the Complaint:



Compl. ¶ 30.  Of particular note, each message:  (i) identified Harris Brothers as the sender; (ii) provided a link to the Harris Brothers website for more information about the auction; and (iii) informed Plaintiff that he could "opt out" of receiving messages by replying "STOP."  *Id.* ¶¶ 30-31.

The Complaint does not allege that Plaintiff replied "stop," let alone that he continued to receive text messages after doing so.  Plaintiff nevertheless asserts that he is entitled to recover statutory damages from both Harris Brothers and Mobiz because:  (i) his phone number was

listed on the DNC Registry (*id.* ¶¶ 23, 71); and (ii) defendants did not use the caller name

delivery functionality (referred to in the Complaint as CNAM) that was available from the

telephone carrier and would have transmitted additional Caller ID information with the message

(*id.* ¶¶ 27, 77).

## ARGUMENT

### I.    The Complaint Fails to State a Plausible Claim for Relief

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure the Complaint must "'state a claim [for] relief that is plausible on its face,' accepting

the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor."

*Maloy v. Ballori-Lage,* 744 F.3d 250, 252 (1st Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that "allow[]

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  There must be "more than a sheer

possibility that a defendant has acted unlawfully," *id.*, and a claim must be supported by facts

sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In making that assessment, "the court must separate the complaint's factual allegations

(which must be accepted as true) from its conclusory legal allegations (which need not be

credited)." *Morales-Cruz v. Univ. of Puerto Rico,* 676 F.3d 220, 224 (1st Cir. 2012); *Iqbal,* 556

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements" are entitled to no weight).  In addition, where there are multiple

defendants, the complaint must separately identify what each defendant is alleged to have done

wrong. *See Bishay v. Ricciuti*, 575 F. Supp. 3d 262, 268 (D. Mass. 2021) (finding pleadings

deficient where the plaintiff "lump[ed] all Defendants together without specifying which

Defendant [wa]s alleged to have committed the pertinent act" because "determining what each Defendant did wrong, and thus the basis of any of the legal claims cited, is nearly impossible").

The Complaint falls well short of these standards.

### A.    Count I Fails Because the Complaint Lacks Factual Allegations Plausibly Supporting Plaintiff's Assertion that Mobiz "Initiated" Text Messages

In his first claim, Plaintiff impermissibly combines Mobiz with Harris Brothers and alleges that "Defendants" violated Section 227 of the TCPA "by causing multiple telephone solicitation calls to be *initiated* to Plaintiff" even though his phone number was listed on the DNC Registry.  Compl. ¶ 71 (emphasis added).  The requirement that a defendant "initiate" a telephone solicitation comes from the FCC's implementing regulation.  *See* 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall *initiate* any telephone solicitation to" a residential telephone number on the DNC Registry absent certain exceptions (emphasis added)).

Although that regulation does not define what it means to "initiate" a call, the FCC has construed the term on multiple occasions.  It first explained that a party "'initiates' a telephone call when it takes the steps necessary to physically place a telephone call," but generally does not include those that "merely have some role, however minor, in the causal chain that results in the making of a telephone call."  *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6583-84 (2013).

In 2015, the FCC expanded that definition in relation to communications platforms through which others are able initiate telephone calls, like Mobiz's platform.  The FCC stated that the assessment should consider "the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the

call; and 2) whether another person or entity was so involved in placing the call as to be deemed

to have initiated it, considering the goals and purposes of the TCPA." *In the Matter of Rules &*

*Reguls. Implementing the Tel. Consumer Prot. Act of 1991,* 30 F.C.C. Rcd. 7961, 7980 (2015)

(partially overturned for other reasons).  Applying that analysis, the FCC then rejected a TCPA

claim against the platform provider YouMail, which enabled "its app users" to send automatic

text messages through its platform.  *Id.* at 7981.  The FCC held that YouMail was not an initiator

because it "exercise[d] no discernible involvement in deciding whether, when, or to whom an

auto-reply is sent, or what such an auto reply says."  *Id.*

Since then, courts have regularly dismissed claims against platform providers where the

complaint does not allege that the provider had decision-making involvement in sending the

message.  For example, in *Adzhikosyan v. Callfire, Inc.*, the court dismissed a complaint against a

defendant "that … provide[d] a mass SMS messaging system and sent the messages," but failed

to explain "how [Plaintiff] kn[ew] that Defendant, rather than the parties that identified

themselves in the messages … sent the texts."  No. CV 19-246 PSG (GJSx), 2019 WL 7856759,

at *3-4 (C.D. Cal. Nov. 20, 2019)  The court held that "a 'platform' is not liable without

allegations that it made decisions about individual messages."  *Id.*

Many other courts have applied the same logic and dismissed claims where a complaint

did not include factual allegations that the defendant "controlled the recipients, timing or

content" of the messages.  *Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL

4855378, at *2-3 (E.D. Wash. Oct. 1, 2019); *see, e.g.*, *Sheski v. Shopify (USA) Inc.*, No. 19-CV-

06858-HSG, 2020 WL 2474421, at *4 (N.D. Cal. May 13, 2020) (dismissing complaint where

"even making all inferences in Plaintiff's favor, the allegations provide no factual basis to

establish that Shopify was directly involved in the procurement of consumers' phone numbers,

stores those numbers, transfers the numbers to texting apps, or approves the messages to be sent to those numbers."); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-CV-07129-YGR, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018) (dismissing complaint where "plaintiff's allegations indicate that the app users, *i.e.*, the Buffalo Wild Wings restaurants, initiated the text messages because they, and not Yelp, decided whether, when, and to whom to send the text messages").

The lion's share of the allegations supporting Count I are entitled to no weight because they impermissibly lump Mobiz and Harris Brothers together as "Defendants" as part of a conclusory allegation that they caused "telephone solicitation calls to be initiated to Plaintiff." Compl. ¶ 71.[2]  When those allegations are set aside, there is nothing left to support a claim against Mobiz.  Just as in *Callfire*, *Cannabis & Glass*, and the other cases referenced above, there are no facts in the Complaint alleging that Mobiz controlled "the recipients, timing or content" of the Harris Brothers text messages.  *Cannabis & Glass*, 2019 WL 4855378 at *2–3.

To the extent there are *any* allegations on that topic, it is that Harris Brothers had such control; not Mobiz.  For example, the Complaint alleges that Harris Brothers "drafted the very messages themselves" (Compl. ¶ 49), directed "the content of the communications" (*id.*), and selected the "criteria and demographics" of who would be contacted (*id.* ¶ 44).  The little alleged about Mobiz is that it is a "text message market[er] … that could send text messages *en masse*." *Id.* ¶ 42.  In other words, Mobiz provides a platform through which its customers, like Harris Brothers, can draft and send text messages to people of their choosing.  But, as the case law shows, that does not make Mobiz an initiator.  "[A] 'platform' is not liable without allegations

---

[2]     *See also* Compl. ¶ 18 ("At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the automated text messages at issue."); ¶ 45 ("Defendants continued to market to Plaintiff[.]"); ¶ 60 ("Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed."); ¶ 71 ("Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated" despite presence "on the National Do Not Call Registry.").  These allegations are entitled to no weight because, in addition to being conclusory, they do not differentiate who did what.

that it made decisions about individual messages." *Callfire*, 2019 WL 7856759 at *3-4. Because there are no such allegations, Count I must be dismissed as to Mobiz.

> **B.    *Count II Fails Because it Seeks to Enforce a Regulation for Which There is No Private Right of Action***

In Count II, Plaintiff impermissibly pursues a claim for alleged violations of a technical, procedural requirement promulgated by the FCC pursuant to a section of the TCPA that does not provide a private right of action. More specifically, Plaintiff asks this Court to adopt an interpretation of 47 C.F.R. § 64.1601 (the "Caller ID Rule") that is contrary to that of nearly every court in the country that has considered the issue.

The Caller ID Rule requires that "[a]ny person or entity that engages in telemarketing, as defined in 47 C.F.R. § 64.1200(f)(10), must transmit" certain technical information via Caller ID. 47 C.F.R. § 64.1601(e)(1). Depending on the capabilities of the relevant carrier transmitting the call from sender to recipient, the required information may also include caller name, which the Complaint refers to as CNAM. *See id.*; Compl. ¶¶ 27-29. Contrary to what Plaintiff asserts, there is no private right of action for him to enforce the Caller ID Rule.

It is black letter law that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). An agency cannot create a private right of action through a rulemaking procedure. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."). Instead, private rights of action for violations of agency regulations exist only if Congress gave the agency authority to make a rule pursuant to a section of the statute that provides a private right of action. *Sandoval*, 532 U.S. at 284.

Here, Congress gave the FCC authority to promulgate rules in many sections of the

TCPA. But only two—Sections 227(b)(3) and 227(c)(5)—provide a private right of action.

Accordingly, the FCC regulations that "simply apply" Sections 227(b) and (c) "are covered by

the cause of action to enforce that section." *Sandoval*, 532 U.S. at 284-85. But the FCC's

regulations applying other sections of the TCPA are not covered by the private right of action,

and thus individuals lack the ability to enforce them. *Id.* at 285; *see Transamerica Mortg.*

*Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 20 (1979) (when a statute creates a private right of

action for some provisions, but not for others, it is "highly improbable that 'Congress absent

mindedly forgot to mention an intended private action'"). Therefore, whether there is a private

right to enforce the Caller ID Rule turns on whether the rule "simply appl[ies]" either Section

227(b) or (c). It does not.

The Caller ID Rule falls most naturally under Section 227(d), titled "Technical and

procedural standards," which provides no private right of action. In particular, section 227(d)(3)

provides that "all artificial or prerecorded telephone messages … shall … state clearly the

identity of the business, individual or other entity initiating the call." § 227(d)(3)(A). Caller ID

does just that—it enables recipients of calls to "screen out unwanted calls and to identify

companies that they wish to ask not to call again." 68 Fed. Reg. 44144-01, 44166 (2003); *In the*

*Matter of Affordable Enters. of Arizona, LLC.*, 35 F.C.C. Rcd. 12142, 12150 (2020) ("[O]ur rules

require telemarketers to transmit caller ID that both (1) identifies the caller and (2) allows the

consumer to reach the telemarketer.").

The two sections for which Congress gave a private right of action do not relate to Caller

ID requirements. Section 227(b) relates to robocalls. It prohibits the use of an automatic

telephone dialing system or an artificial or prerecorded voice to a telephone number assigned to

service for which a party is charged for a call, 47 U.S.C. § 227(b)(1)(A); the use of an artificial or prerecorded voice to deliver a message to any residential phone without prior express consent, subject to exceptions, § 227(b)(1)(B); and the sending of an unsolicited advertisement to a fax machine, subject to exceptions, § 227(b)(1)(C). It also requires that the FCC prescribe regulations related to who and what types of calls can and must be exempted from the statute's requirements. §§ 227(b)(2)(C), (F)-(I).[3] The Caller ID Rule does not reasonably fall under Section 227(b), because it does not follow Congress's directive to expound upon the statute's prohibitions on robocalls. *See Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016) (Section 227(b) does not "require[] the use of [Caller ID] technology to accomplish [its] … purpose[]").

The only other section of the TCPA that both directed the FCC to promulgate rules and provided a private right of action is Section 227(c), which relates to the DNC Registry. That section directs the FCC to establish regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," § 227(c)(1), including the possibility of "establish[ing] and operat[ing] … a single national database … of telephone numbers of residential subscribers who object to receiving telephone solicitations," § 227(c)(3). The Caller ID Rule has nothing to do with the DNC Registry. It establishes technical requirements that apply regardless of whether the recipient of a call has placed their telephone number on that registry. *See Worsham*, 2016 WL 4592373, at *4 (Section 227(c) does not "require[] the use of [Caller ID] technology to accomplish [its] … purpose[]").

---

[3]    The statute also details what types of faxed unsolicited advertisements are permissible, § 227(b)(2)(D), and what requests not to send future unsolicited advertisements must entail, § 227(b)(2)(E).

For these reasons, legions of courts have held that there is no private right of action for violations of the Caller ID Rule. *See, e.g.*, *Worsham*, 2016 WL 4592373, at \*4-5 (interpreting statute and finding that the Caller ID Rule fell under neither Section 227(b) nor 227(c)), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Meyer v. Cap. All. Grp.*, No. 15-CV-2405-WVG, 2017 WL 5138316, at \*16-17 (S.D. Cal. Nov. 6, 2017) (relying on principles of statutory construction and declining to create a private right of action where none was expressly created); *Griffin v. American-Amicable Life Ins. Co. of Tex.*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at \*5-6 (D. Ore. Sept. 27, 2024) (relying on reasoning of *Worsham* and *Meyer* to dismiss claim under the Caller ID Rule); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789-90 (E.D. Mich. 2020) (relying on *Worsham* and *Meyer* to find no private right of action for Caller ID Rule); *cf. Shank v. Givesurance Ins. Servs., Inc.*, No. 3:19-CV-136, 2022 WL 561596, at \*1 (S.D. Ohio, Feb. 24, 2022) (no claim under the caller ID rule even though "[t]he Caller ID showed the sender of the text message as an SMS short code of '555888'"); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1167 (N.D. Cal. 2010) (same). Although no court in this district has resolved this question, Chief Judge Saylor expressed skepticism that there is a private right of action. *See McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at \*13 n.14 (D. Mass. 2021) ("[I]t is doubtful that a private right of action exists for violations of the [Caller ID Rule].").

In the Complaint, Plaintiff attempts to get ahead of this issue by citing *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at \*1 (E.D. Mich. Mar. 25, 2025), which stands almost by itself in holding that there is a private right of action for violations of the Caller ID Rule. In a great understatement, the court characterized the cases referenced above, as well as several others, as the "Majority Approach." *Id.* at \*3-5. It then conceded that, "*[a]part*

*from one state court opinion, every case presented by the parties has concluded that § 64.1601(e) lacks a private right of action*." *Id.* at *3 (emphasis added) (citation omitted). Going against this near uniform line of authority, the court held, without any meaningful explanation, that there is a private right of action because the Caller ID Rule falls under section 227(c) as a rule that "help[s] protect privacy rights." *Id.* The court fails to explain, however, how identifying *who* is calling protects one's privacy, and it certainly is not as self-evident as, for instance, protections on *whether* they can call at all. *See Worsham*, 2016 WL 4592373, at *4 ("[Section] 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim."). More importantly, Section 227(c) relates only to "rights *to avoid receiving telephone solicitations to which [individuals] object*," § 227(c)(1) (emphasis added)—i.e., rules surrounding the DNC Registry. Especially in the case of text messages, Caller ID does not permit individuals to avoid receiving calls.

Had Congress intended to create a private right of action for technical regulations like the Caller ID Rule, it would have said so—especially when private rights of action were expressly created elsewhere. *See Transamerica Mortg. Advisors*, 444 U.S. at 20. The Court here should follow the weight of precedent to find that there is no private right of action for the Caller ID Rule and dismiss Plaintiff's claim.

## II.    Plaintiff Lacks Standing to Pursue Count II

Even if this Court finds that there is a private right of action enabling Plaintiff to try to enforce the Caller ID Rule, Count II must still be dismissed for lack of standing. Because standing is a jurisdictional matter, a motion to dismiss for lack of standing is properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992). In such motions, the plaintiff "bear[s] the burden of showing"

standing. *Id.* at 112. To do so, Plaintiff must prove he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Plaintiff cannot do so here.

As an initial matter, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, the Court must assess whether Plaintiff "is entitled to have a federal court adjudicate each particular claim that he asserts." *Pagán v. Calderón*, 448 F.3d 16, 26 (1st Cir. 2006); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). In other words, while Plaintiff may have standing to pursue Count I (which Mobiz does not concede), that does not mean he has standing to pursue a claim for technical violations of the Caller ID Rule. *See Spokeo*, 578 U.S. at 342 ("A violation of one of the [statute's] procedural requirements may result in no harm.").

Because standing cannot be automatically inferred from the statute, the Court must therefore consider whether Plaintiff has "adequately allege[d] that he 'suffered or is threatened by [an] injury in fact to a cognizable interest.'" *Pagán*, 448 F.3d at 27 (citation omitted). The injury in fact "must be both 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). An injury is concrete only if it "actually exist[s]." *Spokeo*, 578 U.S. at 340. "Bare procedural violation[s]" are insufficiently concrete to satisfy the injury-in-fact requirement. *Id.* at 341. An injury is particularized if it affects the plaintiff "in a personal and individual way." *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Here, Plaintiff has no injury from the purported violation of the Caller ID Rule, let alone a concrete or particularized one.

The Complaint contains only two allegations of injury, and both relate to those claimed for the purported violation of the DNC Registry rule in Count I. *See* Compl. ¶ 58 ("Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls."); *id.* ¶ 60 ("Plaintiff['s] … privacy has been violated and [he was] annoyed and harassed.  In addition, the calls occupied [his] telephone lines, storage space, battery life, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.").

The Complaint not only fails to allege an injury from the purported violations of the Caller ID Rule—it makes clear that Plaintiff incurred no injury at all. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 804 (W.D. Pa. 2016) (finding no standing for TCPA claim in part because "plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit" (citation omitted)).  According to the Complaint, the Caller ID information transmitted with the text message should have included the caller name (or CNAM).  But Plaintiff knew the name of the caller—the first line of each text message makes clear it was sent by Harris Brothers, and the message provided a link to a Harris Brothers website.  Compl. ¶ 30.

In addition, unlike audio calls, text messages do not even display Caller ID information.  As revealed in the Complaint, Plaintiff was able to determine whether CNAM information was transmitted only because his lawyer has special "access to 'dip' the Caller ID database of the calling carrier to ascertain … whether such CNAM information [transmitted] contained the name of the telemarketer or company whose services were promoted."  *Id.* ¶ 27.  Plaintiff cannot credibly claim a particularized injury from the alleged failure to transmit information that was not visible to him and could only be assessed in hindsight because his lawyer had access to a

14

special database. *See, e.g., Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) ("[T]he Court has never freed a plaintiff alleging a procedural violation from showing a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest."). Therefore, this "bare procedural violation" of the Caller ID Rule and cannot confer standing. *Spokeo*, 578 U.S. at 341.

## **CONCLUSION**

For the foregoing reasons, Mobiz respectfully requests that the Court dismiss all claims asserted against it.

Respectfully submitted,

MOBIZ INC.

By its attorneys,

 */s/ John J. Butts*
John J. Butts (BBO No. 643201)
Tyler P. Carroll (BBO No. 711952)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000 (t)
(617) 526-5000 (f)
john.butts@wilmerhale.com
tyler.carroll@wilmerhale.com

Dated:  July 3, 2025

**CERTIFICATE OF SERVICE**

I, John J. Butts hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date specified below:

Dated: July 3, 2025                                  _/s/ John J. Butts_____
                                                     John J. Butts