UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff<br><br>v.<br><br>MOBIZ INC.; HARRIS BROTHERS OF MICHIGAN, INC.,<br><br>     Defendants. | Civil Action No. 1:25-cv-11036-AK |

**REPLY BRIEF IN SUPPORT OF DEFENDANT
MOBIZ INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
   I.   The Complaint Does Not Allege That Mobiz Initiated Text Messages ............................. 1
      A.   The FCC's Interpretation of the TCPA is Owed Deference and Applies Here ............... 2
      B.   The Complaint Fails to Allege That Mobiz Sent the Text Messages ............................. 3
   II.   The Most Obvious Reading of the Caller ID Rule Is There is No Private Right of Action 6
   III.   Plaintiff Has Not Established Injury or Standing ................................................................ 9
CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Camreta v. Greene*,
    563 U.S. 692 (2011) ........................................................................................................... 9

*Consumer Data Indus. Assoc. v. Frey*,
    26 F.4th 1 (1st Cir. 2022) ................................................................................................ 8, 9

*Cunningham v. Montes*,
    378 F. Supp. 3d 741 (W.D. Wis. 2019) .............................................................................. 6

*Daggett v. Comm'n on Gov't Ethics & Election Practices*,
    205 F.3d 445 (1st Cir. 2000) .............................................................................................. 9

*Dobronski v. Selectquote Ins. Servs.*,
    773 F. Supp. 3d 373 (E.D. Mich. 2025) ............................................................................. 9

*Duncan v. Walker*,
    533 U.S. 167 (2001) ........................................................................................................... 7

*Frank v. Cannabis & Glass, LLC*,
    No. 2:19-CV-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ..................... 3, 4

*Gemini Fishing Inc. v. United States Dep't of Homeland Sec.*,
    No. CV 24-12536-WGY, 2025 WL 1362635 (D. Mass. May 8, 2025) ............................. 3

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    18 FCC Rcd. 14014 (2003) ................................................................................................ 8

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
    30 F.C.C. Rcd. 7961 (2015) ...................................................................................... 2, 3, 5

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ........................................................................................................... 3

*Lyman v. QuinStreet, Inc.*,
    No. 23-CV-05056-PCP, 2024 WL 3406992 (N.D. Cal. July 12, 2024) ......................... 2, 3

*Meeks v. Buffalo Wild Wings, Inc.*,
    No. 17-CV-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ........................... 4

*Nunes v. Twitter, Inc.*,
    194 F. Supp. 3d 959 (N.D. Cal. 2016) ................................................................................ 6

*Piper v. Talbots, Inc.*,
    507 F. Supp. 3d 339 (D. Mass. 2020) ................................................................................5

*Ross v. Blake*,
    578 U.S. 632 (2016) ............................................................................................................6

*Sheski v. Shopify (USA) Inc.*,
    No. 19-CV-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13, 2020) .................3, 4, 5, 6

## STATUTES, RULES, AND REGULATIONS

47 U.S.C. § 227 ..............................................................................................................1, 7, 8, 9

Federal Rule of Civil Procedure 12(b)(1) ..............................................................................9

47 C.F.R. § 64.1200 ..................................................................................................................8

47 C.F.R. § 64.1601(e)(1) ........................................................................................................7

**PRELIMINARY STATEMENT**

Plaintiff's opposition does nothing to salvage the Complaint. In the hope of saving his Initiator Claim (Count I), Plaintiff is forced to stray far outside the Complaint to identify purported facts in an attempt to argue that Mobiz is directly liable. The Court need not consider those facts, but even if it did, they would not be enough to override what is actually in the Complaint. They reveal that Mobiz is a platform provider and was a conduit through which Harris Brothers sent text messages, and it therefore is not an initiator. Plaintiff has utterly failed to allege facts reflecting a plausible entitlement to relief.

For his Caller ID claim (Count II), Plaintiff undertakes a confusing analysis of the statutory text and history of the TCPA to derive an outcome that is inconsistent with the interpretation that legions of courts have adopted and would render portions of the statute superfluous. The proper, and most straightforward, interpretation of the statute is that Congress did not create a private right of action to enforce the Federal Communications Commission's ("FCC's") technical and procedural rule on which Plaintiff's claim is based. Plaintiff also fails to establish that he has standing to bring this claim. The affidavit he submits, at best, describes a theoretical injury that does not come close to qualifying as something concrete and particularized as would be necessary to confer standing. The Complaint should be dismissed.

**ARGUMENT**

**I.   The Complaint Does Not Allege That Mobiz Initiated Text Messages**

Plaintiff's entire argument in support of his claim that Mobiz violated Section 227 of the TCPA hinges on his conclusory assertion that Mobiz directly sent the text messages to Plaintiff. This assertion is not supported by factual allegations, and is in fact both inconsistent with the Complaint's allegations that Harris Brothers directed and sent the messages, and contrary to how

1

Mobiz runs its business: by providing a platform through which others may send messages.  *E.g.*, Compl. ¶¶ 42-44, 49.  Without such allegations, all of Plaintiff's case law is inapplicable.

        **A.**       **The FCC's Interpretation of the TCPA is Owed Deference and Applies Here**

As outlined in Mobiz's opening brief, although the TCPA regulations do not define what it means to "initiate" a call, the FCC has construed the term on multiple occasions.  Mobiz Br. 5.  In 2015, the FCC stated that for communication platforms through which others are able to initiate calls, the assessment should consider "1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA."  *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7980 (2015) ("2015 FCC Order") (partially overturned for other reasons).

Without much of a response, Plaintiff tries to speak out of both sides of his mouth—relying on this definition for part of his analysis and trying to discredit it elsewhere.[1]  He states that "[t]he scope of direct liability is determined by the statutory text, not FCC regulations" and proceeds to provide a dictionary definition for the term "initiate" in a threadbare attempt to interpret the statutory text without any case law or legislative history supporting it.  Opp. 3, 4-6.  It is well settled, however, that an agency's decision-making is due respect, particularly here, where Congress has expressly conferred discretionary authority to the agency.  *See Lyman v. QuinStreet, Inc.*, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) (noting that "Congress has expressly conferred discretionary authority on the [FCC] to flesh out the TCPA," and holding that, as the APA requires, courts "accord[] due respect to the FCC's interpretation" and "need[]

---

[1] While his opposition discredits the FCC's definition, Plaintiff cites to the FCC's interpretation when outlining the standards for providing TCPA liability.  Opp. 4.  Plaintiff additionally refers to and quotes extensively the FCC's interpretations of the TCPA for support throughout the Complaint.  *See* Compl. ¶¶ 34-37; 55.

'only independently identify and respect such delegation[] of authority, police the outer statutory boundaries of [that delegation], and ensure that [the agency exercises its] discretion consistent with the APA'"); *Gemini Fishing Inc. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1362635, at *6 (D. Mass. May 8, 2025) ("[T]his Court must defer to the agency's reasonable interpretations of its own regulations"). Further, the FCC does not stand alone in using that definition of "initiate." Many courts have used the FCC's definition when determining the scope of TCPA liability for platforms, and those courts' opinions hold precedential effect. *See e.g.*, *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2-3 (E.D. Wash. Oct. 1, 2019) (applying the 2015 FCC Order); *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2-4 (N.D. Cal. May 13, 2020) (same); *see also Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 412 (2024) (holding that cases giving deference to agency actions under the *Chevron* framework "are still subject to statutory *stare decisis*"). Accordingly, the FCC's definition of "initiate" is instructive here.

   **B.**  **The Complaint Fails to Allege That Mobiz Sent the Text Messages**

  No matter what definition of "initiate" is used, Plaintiff has failed to plausibly allege that Mobiz initiated the messages in question here. He argues that Mobiz "directly sent the text messages at issue" and, therefore, Mobiz is liable as an initiator under the TCPA. *See, e.g.*, Opp. 2-3. But the eighty-paragraph Complaint does not support that claim. Instead, the Complaint alleges that Harris Brothers "draft[ed] the very messages themselves" (Compl. ¶ 49), directed "the content of the communications" (*id.*), and selected the "criteria and demographics" of who would be contacted (*id.* ¶ 44). To try to rectify this, Plaintiff argues here that "Mobiz physically initiated the text messages at issue, including because it owned the number and that is its very business model." Opp. 8. This argument fails.

  First, it bears no weight on this analysis whether the text messages were sent from Mobiz's phone number. Taking that allegation as true, all that shows is that Mobiz's platform

3

was used, not that Mobiz sent the messages themselves. While the owner of the phone number may be significant if the person sending the message uses their own device, it holds no weight where a communication platform was used. *See, e.g.*, *Shopify*, 2020 WL 2474421, at *3 ("[T]he fact that Shopify provides a platform to send the text messages such that the SMS short code is the same for all of the retailers does not lead to the inference that Shopify, rather than the individual retailer identified in the text itself, controlled the content of and sent the message."); *Cannabis & Glass*, 2019 WL 4855378, at *1 (dismissing the case against the platform even though the text messages "were sent using [the platform's] SMS short codes"); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (dismissing case against the platform where the "plaintiff allege[d] that the [co-defendant] use[d] Yelp's 'platform' to send the offending text messages"). Here too, merely alleging that the text message came from Mobiz's phone number is insufficient to allege that Mobiz sent the message.

Second, Mobiz's business model does not support a finding that it sent the messages. If anything, it bolsters Mobiz's argument that it was merely a platform that Harris Brothers used to do so. Throughout his brief, Plaintiff cites information outside the Complaint, such as Mobiz's website and other information related to its business, to argue that these sources show that "Mobiz provides the service to send the messages" to its customers. Opp. 2. It does not.[2] Providing a platform through which users can send their messages to customers does not mean *Mobiz* sends the messages—it means the *user* sends the messages, using Mobiz's platform. *See Shopify*, 2020 WL 2474421, at *3.

---

[2] *See, e.g.*, www.getmobiz.com (describing the cycle of customer campaigns to include "write your text" and "send your campaign," and including customer testimonial that "[m]inimal training is required… get up to speed in minutes and send a text").

4

Plaintiff also argues that "Harris Brothers told Mr. Novia that it used Mobiz to send the text messages at issue and relied on its expertise and technical ability to do so." Opp. 6. This purported exchange does not appear anywhere in the Complaint and Plaintiff provides no citation for it. Accordingly, the Court should not give these statements any weight. *See Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) ("[A] court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice."). But notably, the exchange only further substantiates Mobiz's argument that it was Harris Brothers who sent the messages and that they merely used Mobiz's platform.

Presumably recognizing the weaknesses in these arguments, as a fall back, Plaintiff briefly argues that Mobiz could be held liable under the FCC's analysis of when a platform is "so involved in placing the call as to be deemed to have initiated it." 2015 FCC Order at 7980. Plaintiff points to templates, customer support, and tools that Mobiz's website outlines it offers customers. Opp. 5. Notably, there is no allegation in the Complaint that Harris Brothers paid for or used any of these services. Even assuming *arguendo* that these allegations could be considered here, they do not support a finding that Mobiz was so involved in creating the messages that it initiated them. In *Shopify*, the court found that where the platform "provides the template for the checkout form, offers a suite of apps …, provides counseling on best practices for marketing, and takes a percentage of the retailer's revenue," it still "does not indicate that [the platform] has any control over a retailer's actual text marketing campaigns," and it ultimately dismissed the claim against the platform. 2020 WL 2474421, at *3. The services Plaintiff points to here do not rise to the level of involvement needed to sufficiently allege initiation.

Finally, contrary to what Plaintiff asserts, the platform cases cited in Mobiz's brief are analogous. *See* Opp. 7 ("[T]here were no allegations that Shopify 'sent or was directly involved

5

in sending the text messages' at all"). As alleged, Harris Brothers used Mobiz's platform to send messages that they drafted, promoting their business, to customers that they selected. Just like those other cases, Mobiz merely provided the platform Harris Brothers used and should not be held liable for "initiating" under the TCPA.

In contrast, the cases Plaintiff cites to for support are inapposite, with liability hinging on findings that the platforms themselves sent the messages in question. For example, in *Cunningham v. Montes*, the court completely discredited all evidence plaintiff presented of the platform's customer support and training because they "show[ed] only that [the Defendant] set up and operated a telemarketing platform," and, therefore, "add[ed] nothing to [the Plaintiff's] case." 378 F. Supp. 3d 741, 749 (W.D. Wis. 2019). Instead, the court focused on evidence showing that the Defendant "would sometimes actually set up and run the dialing campaigns" including "launching the campaign by 'hit[ing] send or start.'" *Id.* at 748. *See also Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 962 (N.D. Cal. 2016) (finding that "Twitter is the actual sender of the text"). The case law here is clear: where a defendant's only role is to provide a platform through which users can send messages, it is not liable under the TCPA.

## II. The Most Obvious Reading of the Caller ID Rule Is There is No Private Right of Action

Plaintiff's argument regarding Count II also fails. Citing only two cases for support, he muddles his way through a confusing analysis that: (i) ignores the obvious purpose behind the statute; and (ii) would swallow the TCPA's private right of action rule.

To begin, Plaintiff argues that statutory interpretation "begins with the text." Opp. 9 (quoting *Ross v. Blake*, 578 U.S. 632, 638 (2016)). That is true as far as it goes, but Plaintiff's argument that the Caller ID Rule falls under Section 227(c) (which concerns privacy rights) ignores the obvious reading of the statute's text. The Caller ID Rule, which requires entities to

6

*transmit their identity* when calling, 47 C.F.R. § 64.1601(e)(1), falls most plainly under Section 227(d), in which Congress required that "all artificial or prerecorded telephone messages … shall … *state clearly the identity* of the business, individual or other entity initiating the call," 47 U.S.C. § 227(d)(3)(A) (emphasis added).  Plaintiff's argument to the contrary is unavailing.

He attempts to steer the Court toward an over-complicated and contrived reading of the statute, whereby he improperly narrows Section 227(d) to "relate[] only to fax machines and automatic telephone dialing systems, not to telemarketing calls in general," and then argues Section 227(d) relates only "to the matters of Section 227(b)."  Opp. 10.  Plaintiff provides no support for this proposition.  Nor could he.  The sections make no mention of one another, and if Congress wanted Section 227(d) to relate to Section 227(b), it would not have created two separate provisions, each directing the agency to undergo rulemaking for different aims.  *See* § 227(d) (requiring the agency to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone"); § 227(b) (requiring the agency to "prescribe regulations to implement the requirements of *this subsection*," including "regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent" (emphasis added)); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) (when interpreting a statute, "no clause, sentence, or word shall be superfluous, void, or insignificant").

In the hope of supporting his circular argument, Plaintiff launches into in a six-page colloquy on the legislative history of the TCPA and the FCC's rules promulgated under it.[3]  He claims that because "[t]he 2003 TCPA Order references Section 227(c) no fewer than 54 times and Section 227(d) only *once*, … the FCC *explicitly tied* the Caller ID requirements at issue here

---

[3]    Plaintiff's heavy reliance on the FCC's rulings stands in stark contrast to his attempt to distance himself from them in his first claim.  *See* Section I.A. *supra*.  He cannot have his cake and eat it too.

7

to the TCPA's private right of action in Section 227(c)." Opp. 11 (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003)). But this assumes more than it proves. Apart from one paragraph, the order makes no mention of Section 227(c) in the same discussion as the Caller ID Rule. And in that one paragraph, the order references Section 227(c) in tandem with caller ID requirements for company-specific do-not-call databases under 47 C.F.R. § 64.1200, which are not at issue here. *See* 2003 TCPA Order, 18 FCC Rcd. at 14041 ("As required by section 227(c)(1)(A), we have compared and evaluated the advantages and disadvantages of certain alternative methods to protect consumer privacy including … company-specific lists in adopting a national do-not-call database."). Plaintiff cannot divine meaning from the fact that the concept of caller ID was mentioned in the same order as Section 227(c), let alone rely on it as a permissible tool of statutory interpretation.

Next, Plaintiff argues that the purpose of the Caller ID Rule aligns with the purpose of Section 227(c): to protect consumer privacy. Opp. 14. But if privacy were the standard, all TCPA regulations would have a private right of action. The TCPA's express purpose is to "address … certain telemarketing practices thought to be an invasion of consumer privacy." 2003 TCPA Order, at 14018. If all TCPA regulations were deemed to somehow relate to privacy, they all would arguably be promulgated pursuant to Section 227(c) and would all have a private right of action. Not only would that contravene Congress's express intent to create a private right of action in only *some* circumstances, but it would render the other provisions granting a private right of action superfluous. *See Consumer Data Indus. Assoc. v. Frey*, 26 F.4th 1, 7 (1st Cir. 2022) (rejecting a proposed interpretation of a statute because it would render the other parts of the statute surplusage and "disregard the care and specificity with which Congress drafted

8

those provisions"). Thus, it cannot be the case that because the Caller ID Rule relates to privacy in the abstract, Congress intended to give individuals a private right to enforce it.

Finally, in response to the mountain of case law that Mobiz cited in its opening brief rejecting a private right of action for the Caller ID Rule, Plaintiff states that many "were subsequently reversed in *Dobronski* [*v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025)]." Opp. 15. That is a ridiculous statement. District courts cannot reverse or overrule one another. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in [] a different judicial district, the same judicial district, or even upon the same judge in a different case."). The fact remains that the overwhelming majority of courts have correctly held that the Caller ID rule falls under Section 227(d) and therefore does not provide a private right of action. *See* Mobiz Br. at 11 (collecting cases).[4]

## III. Plaintiff Has Not Established Injury or Standing

While the Court may consider Plaintiff's affidavit in Mobiz's Rule 12(b)(1) challenge, it cannot rely on the hypothetical statements he offers in the hope of establishing injury and standing. *See, e.g.*, *Daggett v. Comm'n on Gov't Ethics & Election Practices*, 205 F.3d 445, 463 (1st Cir. 2000) (finding no standing in part because affidavits did not "provide enough specificity … to display a real or even a threatened injury"). Plaintiff's affidavit is purely hypothetical. Most tellingly, Plaintiff does not address the fact that, according to the Complaint, he only later learned of his purported injury when his attorney used a specialized database to which he had access to locate information that would not show up on Plaintiff's phone. Compl. ¶ 27. Absent

---

[4] Plaintiff attaches to his opposition a slip opinion dated after Mobiz filed its motion in which a court in the Eastern District of Pennsylvania agreed with him. That hardly closes the gap between the overwhelming number of courts that have found there is no private right of action. *See* Mobiz Br. at 11 (citing cases).

9

some *particularized* injury—*i.e.*, one that affected Plaintiff in a personal and individual way—Plaintiff's Caller ID claim must be dismissed for lack of standing.

Plaintiff's gambits to try to manufacture injury are all unavailing. First, he asserts that because the text message "showed up as a number instead of being associated with a name," he could not "know[] who [wa]s texting [him] at a glance and [he was] require[d] … to open the message." Opp. Ex. 1 ¶ 7. While he implies that the way messages are processed by a phone might vary depending on whether a screen is locked, he says nothing about the specific circumstances in which he received these texts from Harris Brothers. And there is no question that once he opened the message, Plaintiff saw that it was from Harris Brothers. Compl. ¶ 30. Also, that he "would be forced to add the number to [his] contacts" to discern the sender, Opp. Ex. 1 ¶ 9, is true of any text message from a sender who is not in a recipient's contact list. Plaintiff does not allege, for example, that he must open a message every time he consents to receive a text message (nor could he reasonably). Thus, this purported injury is illusory.

Next, Plaintiff asserts that, "[b]ecause the caller ID information did not identify the caller by name, [he] had no way to know who was attempting to solicit [him], whom to ask to stop, or whom to sue to protect [his] rights." Opp. Ex. 1 ¶ 11. This is absurd: Harris Brothers' information was included in the message as were instructions on how to stop receiving the messages—reply "stop." *Id.* ¶ 30. The Complaint does not allege that Plaintiff replied "stop," or that he continued to receive text messages after doing so. Lacking specific facts of a concrete injury that is not conjectural or hypothetical, the affidavit does nothing to save Plaintiff's Caller ID claim.

## CONCLUSION

For the foregoing reasons, Mobiz respectfully requests that the Court dismiss all claims asserted against it.

        Respectfully submitted,

        MOBIZ INC.

        By its attorneys,

        */s/ John J. Butts*
        John J. Butts (BBO No. 643201)
        Tyler P. Carroll (BBO No. 711952)
        Elizabeth J. Bedrick (BBO No. 713985)
        WILMER CUTLER PICKERING
         HALE AND DORR LLP
        60 State Street
        Boston, MA 02109
        (617) 526-6000 (t)
        (617) 526-5000 (f)
        john.butts@wilmerhale.com
        tyler.carroll@wilmerhale.com
        elizabeth.bedrick@wilmerhale.com

Dated:  July 24, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 24, 2025.

                                                */s/ John J. Butts*
                                                John J. Butts