**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>MOBIZ, INC.; HARRIS BROTHERS OF MICHIGAN, INC.,<br><br>    Defendants. | Civil Action No. 1:25-cv-11036-AK |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**HARRIS BROTHERS OF MICHIGAN, INC.'S MOTION TO DISMISS**

For the reasons discussed below, Defendant Harris Brothers of Michigan, Inc. ("Harris Brothers") respectfully moves this Court to dismiss Plaintiff Steven Novia's class action complaint in its entirety again Harris Brothers for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**BACKGROUND**

A.    **Jurisdictional Facts**

Harris Brothers is a small, family-owned auction company that sells high-end collectibles, such as antique toys, gold and silver jewelry, and old signs and advertising. Declaration of David Harris ("Harris Decl.") ¶ 3. It is a Michigan corporation with its principal place of business located at 127 South Saginaw Street in Byron, Michigan. Declaration of David Harris ("Harris Decl.") ¶ 4.

Harris Brothers is not registered to do business in Massachusetts and does not have any offices, managers, employees, property, assets, or bank accounts in the state. *Id.* ¶¶ 5-6. Harris Brothers does not conduct business, advertise, or solicit customers in Massachusetts. *Id.* ¶ 7.

1

### B.    Facts Alleged in the Complaint

As alleged in the complaint, in February and March of 2025, Novia received at least four text messages to his personal phone number from a number owned by MoBiz, Inc. ("MoBiz"), a company that sends marketing text messages. Compl. ¶¶ 5, 20, 25. These text messages solicited Novia to participate in various Harris Brothers auctions:



Id. ¶ 30. According to Novia, Harris Brothers drafted these text messages and provided MoBiz with "the specific criteria and demographics of individuals it desired to target." Id. ¶ 44. MoBiz then used these criteria to conduct an "*en masse* text message telemarketing campaign." Id. ¶¶ 42-44, 49.

Although each message informed Novia that he could opt out of future messages by replying "STOP," id., Novia does not allege that he replied "STOP" to any of these messages or that he continued to receive text messages after having done so. Nevertheless, he asserts that he

is entitled to recover statutory damages from both MoBiz and Harris Brothers because (1) his

phone number listed on the DNC registry, *id.* ¶¶ 23, 71; and (2) MoBiz and Harris Brothers did

not use the caller name delivery functionality that was available from the telephone carrier and

would have transmitted additional caller identification information with the text messages, *id.*

¶¶ 27, 77.

## ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over Harris Brothers

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal

court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the

forum state." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st

Cir. 2002) (internal quotation marks omitted). Accordingly, this Court may exercise personal

jurisdiction only within the limits set by Massachusetts' long-arm statute and the due process

clause of the United States Constitution. *See Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d

111, 112 (1st Cir. 1997). Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific

constraints on the exercise of personal jurisdiction that are not coextensive with the parameters

of due process . . . a determination under the long-arm statute is to precede consideration of the

constitutional question." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325 (2017).

1.    The Massachusetts Long-Arm Statute Does Not Confer Personal Jurisdiction

The Massachusetts long-arm statute provides, in relevant part, for the exercise of personal

jurisdiction over an individual in a cause of action "arising from the person's . . . transacting any

business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). The transacting-business

test under section 3(a) "is designed to identify deliberate, as distinguished from fortuitous,

contacts with the forum by the nonresident party." *Roy v. FedEx Ground Package Sys., Inc.*, 2018

WL 2324092, at *5 (D. Mass. May 22, 2018). As such, "the facts must satisfy two

requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's

claim must have arisen from the transaction of business [in Massachusetts] by the defendant."

*Id.* (quoting *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994)).

Although the transacting-business requirement is construed broadly, *Tatro*, 416 Mass. at

771, it nevertheless imposes real limitations, *see Lacy v. Jublia Pte LTD.*, 100 Mass. App. Ct.

1131, 2022 WL 982076, at *2–3 (2022) (collecting cases). Specifically, personal jurisdiction

does not exist where a non-resident defendant's contacts with Massachusetts were "purely

incidental" to the business transactions, or were "random or isolated events," as opposed to a

larger systematic effort to garner business from Massachusetts business and residents. *Aub v.*

*Technicolor Entertainment Services*, 224 F. Supp. 2d 371, 373 (D. Mass. 2002) (citing *Tatro*, 416

Mass. at 77–71). A key consideration is whether the defendant attempted to "participate in the

[C]ommonwealth's economic life." *United Elec., Radio & Mach. Workers v. 163 Pleasant Street*

*Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992).

In this case, Novia cannot show that Harris Brothers transacted business in

Massachusetts. Harris Brothers is not registered to do business in Massachusetts and does not

have any offices, managers, employees, property, assets, or bank accounts in Massachusetts.

Harris Decl. ¶¶ 5-6. Nor does it conduct business, advertise, or solicit customers in

Massachusetts. *Id.* ¶ 7. At most, Novia's complaint suggests that Harris Brothers provided MoBiz

with "specific criteria and demographics of individuals it desired to target," Compl. ¶ 44, and

MoBiz then used these criteria to inform its telemarketing campaign, *id.* ¶¶ 42-44, 49, which

included four text messages to Novia's personal phone number, *id.* ¶ 30. Novia does not allege

that any other test messages promoting Harris Brothers auctions were received by Massachusetts

residents, and the four messages received by Novia are insufficient to constitute "transacting

business" in Massachusetts. *See*, *e.g.*, *Droukas v. Divers Training Academy Inc.*, 375 Mass. 149, 151, 153-157 (1978) (isolated sale of two marine engines and contacts consisting of advertising in publication distributed in Massachusetts, corresponding with plaintiff by mail and telephone to accept and confirm sale, and shipping goods via independent carrier to Massachusetts insufficient to confer jurisdiction under § 3[a]); *Stanton v. AM Gen. Corp.*, 50 Mass. App. Ct. 116, 118 (2000) (defendant's isolated transaction of purchasing certain component parts from Massachusetts company and selling vehicles it manufactured to Massachusetts dealership insufficient to constitute transacting business). The Massachusetts long-arm statute therefore does not authorize this Court's jurisdiction over Harris Brothers, and Novia's claims must be dismissed.

2.    Jurisdiction Is Also Improper Under the Due Process Clause

Even if the Massachusetts long-arm statute did authorize jurisdiction over Harris Brothers—which it does not—a district court still cannot assert jurisdiction over a non-resident defendant where, as here, doing so would violate the due process clause.

A district court may exercise personal jurisdiction over a non-resident defendant by virtue of either general or specific jurisdiction. *See U.S. Bank v. Swiss American Bank, Ltd.*, 274 F. 3d 610, 618 (1st Cir. 2001). General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. *163 Pleasant Street Corp.*, 960 F. 2d at 1088. Specific jurisdiction arises when "the cause of action arises directly out of, or relates to, the Defendant's forum-based contacts." *Id.* at 1088-89. Novia has failed to establish this Court's jurisdiction under either standard.

*a.    This Court Lacks General Jurisdiction Over Harris Brothers.*

To establish general jurisdiction over Harris Brothers, Novia must show that Harris

Brothers' "corporate operations within [Massachusetts are] so substantial and of such a  nature as

to justify suit . . . on causes of action arising from dealings entirely distinct from those

activities." *Daimler AG v. Bauman*, 571 U.S. 117, 118-19 (2014). In *Bauman*, the Supreme Court

held that Daimler was not subject to general jurisdiction in California, despite its significant sales

in California. *See id.* Specifically, the Court stated:

> Neither Daimler nor [Daimler's parent] is incorporated in California, nor does either
> entity have its principal place of business there. If Daimler's California activities sufficed
> to allow adjudication of this Argentina-rooted case in California, the same global reach
> would presumably be available in every other State in which [Daimler's parent's] sales
> are sizable. No decision of this Court sanctions a view of general jurisdiction so grasping.

*Id.* at 119.

Harris Brothers' relationship with Massachusetts is—if any—significantly more

attenuated than Daimler's with California. As previously discussed, Harris Brothers does not

maintain any office or have any employees or assets in Massachusetts, nor does it conduct any

business in Massachusetts. The only contacts that Novia has alleged are the four text messages

he received from MoBiz soliciting him to participate in various Harris Brothers auctions. These

four advertising messages cannot constitute continuous or systematic contacts under the law. *See,*

*e.g., Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 89 (1st Cir. 1990) (holding that the following

were not sufficient contacts to authorize general jurisdiction: "licensure and appointment of an

agent for service of process; advertising; and litigation activities").

*b.    This Court Lacks Specific Jurisdiction Over Harris Brothers*

Nor does this Court have specific personal jurisdiction over Harris Brothers. To satisfy

due process, a plaintiff must demonstrate that the dispute between the parties arises out of, or is

related to, the defendant's contacts with Massachusetts and that those contacts constitute

"purposeful availment" by the defendant of the benefits and protections afforded by Massachusetts law. *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). Purposeful availment requires a showing that the "defendant purposefully and voluntarily directs [its] activities toward the forum" such that the defendant "should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on these contacts." *Swiss American Bank, Ltd.*, 274 F.3d at 624. The two "cornerstones" of purposeful availment are "voluntariness and foreseeability." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014). For a defendant's contacts with the forum to be considered voluntary, they must proximately result from the defendant's own actions. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 18 (1st Cir. 2019). Foreseeability in this context means that a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting B*urger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This standard ensures that an exercise of jurisdiction is not based on defendant's "random, fortuitous, or attenuated contacts." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011).

Here, Novia cannot show that Harris Brothers took any actions that invoked the benefits or protections of Massachusetts law. Novia alleges that Harris Brothers "contracted with MoBiz to send text messages into this District and knowingly directed the sending of text messages into this District," Compl. ¶ 8, but this is a conclusory legal assertion, not a factual one. Rather, Novia's only factual assertions on this point are that Harris Brothers provided MoBiz with "specific criteria and demographics of individuals it desired to target," and that based on these criteria, MoBiz "orchestrate[d] an *en masse* text message telemarketing campaign." Compl. ¶¶ 43-44. Novia does not allege—because no facts support such an allegation—that Harris

Brothers directed MoBiz to place calls to or to target Massachusetts residents or Massachusetts area codes. Nor has he alleged that Harris Brothers authorized any text messages to Massachusetts or even knew that MoBiz was contacting Massachusetts residents. Under such circumstances, "[c]ases across various district and circuit courts weigh heavily against finding purposeful availment [or direction] when a defendant is not involved with the delivery or approval of communications received within a forum." *Powers v. One Techs.*, LLC, 2021 WL 3519282, at \*3 (W.D.N.C. Aug. 10, 2021) (dismissing TCPA case on jurisdictional grounds and collecting cases). There is accordingly no basis for the Court's exercise of personal jurisdiction over Harris Brothers, and the Court should dismiss the complaint against Harris Brothers.

### B.    Count II of the Complaint Fails to State a Claim

If this Court were to conclude that it has personal jurisdiction over Harris Brothers— which it should not—the Court should nevertheless dismiss Count II for failure to state a claim. Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing plausibility, a Court does not credit "mere conclusory statements" or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

In Count II, Novia alleges a violation of 47 C.F.R. § 64.1601(e) (the "Caller ID Rule"), which requires telemarketers to provide certain caller ID information. This claim fails for the simple reason that the regulation cannot be privately enforced.

Not every violation of the TPCA gives rise to a private cause of action. In fact, only two provisions of the TCPA—subsection (b) and subsection (c)—expressly provide for private enforcement. *See* 27 U.S.C. §§ 227(b)(3), 227(c)(5); *see also, e.g.*, *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at \*15 (S.D. Cal. Nov. 6, 2017). So, because "[i]t is axiomatic that an

administrative agency's power to promulgate legislative regulations is limited to the authority

delegated by Congress," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), whether

the Caller ID Rule is privately enforceable turns on whether it was promulgated pursuant to

subsection (b) or (c) of the TCPA.

But almost every court to consider the issue has concluded otherwise. *See, e.g., Griffin v.*

*Am.-Amicable Life Ins. Co. of Texas*, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024);

*Dobronski v. Tobias & Assocs.*, 2023 WL 7005844, at *8 (E.D. Mich. Sept. 25, 2023), *report and*

*rec. adopted in part sub nom. Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553 (E.D.

Mich. Mar. 18, 2024) (dismissing claim under § 64.1601(e) on grounds that it does not create a

private right of action); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4338957, at *7 (E.D.

Mich. May 14, 2021), *report and rec. adopted in part, rejected in part*, 2021 WL 4452218 (Sept.

29, 2021) (same, dismissing with prejudice); *Worsham v. Direct Energy Servs., LLC*, 2021 WL

948819, at *3 (D. Md. Mar. 12, 2021), *aff'd*, 2022 WL 1261998 (4th Cir. Apr. 28, 2022) (finding

no private right of action at summary judgment stage); *Dobronski v. SunPath Ltd.*, 2020 WL

8840311, at *7 (E.D. Mich. July 27, 2020) (finding no private right of action on motion to

dismiss); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020)

(same, denying leave to amend); *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal.

Nov. 6, 2017) (finding no private right of action on motion to dismiss); *Worsham v. Travel*

*Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir.

2017) (finding no private right of action and denying default judgment as to Caller ID Rule

claim); *cf. Shank v. Givesurance Ins. Servs., Inc.*, 2022 WL 561596, at *1 (S.D. Ohio, Feb. 24,

2022) (no claim under the caller ID rule even though "[t]he Caller ID showed the sender of the

text message as an SMS short code of '555888'"); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d

1165, 1167 (N.D. Cal. 2010) (same). And while no court in this district has resolved the question, at least one session has expressed skepticism that there is a private right of action. *See McDermet v. DirecTV, LLC*, 2021 WL 217336, at \*13 n.14 (D. Mass. 2021) ("it is doubtful that a private right of action exists for violations of the [Caller ID Rule]").

In all of these cases, the courts determined that the Caller ID Rule "is not properly brought" under either the TCPA's subsection (b), which "prohibits unconsented-to, nonemergency calls using any automatic telephone dialing system or an artificial or prerecorded voice to certain telephone lines, including any telephone number assigned to a cellular service," or subsection (c), which "direct[s] the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations to any number in the database[.]" *Worsham*, 2016 WL 4592373, at \*3; *see also, e.g.*, *Griffen*, 2024 WL 4333373, at \*5; *Meyer*, 2017 WL 5138316, at \*15-17. Rather, the Caller ID Rule "is a violation of technical and procedural standards under subsection *d*," for which no private right of action exists. *Worsham*, 2016 WL 4592373, at \*7.

In his complaint, Novia cites *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 377 (E.D. Mich. 2025), which stands almost by itself in holding that there is a private right of action for violations of the Caller ID Rule. But even putting aside the great weight of authority to the contrary, the court's decision in *Selectquote Ins. Servs.* is flawed. The court appears to suggest that a plaintiff can rely on a statutory provision containing a private right of action even if it is unclear whether that regulation at issue was promulgated pursuant to that provision. *See id.*, at 379-80. That is exactly backwards. Courts "assume that Congress will be explicit if it intends to create a private cause of action." See *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017). And

had Congress intended to create a private right of action for technical regulations like the Caller

ID Rule, it would have said so—especially when private rights of action were expressly created

elsewhere. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (when a

statute creates a private right of action for some provisions, but not for others, it is "highly

improbable that 'Congress absent mindedly forgot to mention an intended private action'")

The Court here should follow the weight of precedent to find that there is no private right

of action for the Caller ID Rule and dismiss Count II of Novia's complaint.

<div style="margin-left: 45%;">

Respectfully submitted,

HARRIS BROTHERS OF MICHIGAN, INC

By its attorneys,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Daniel J. Cloherty (BBO #565772)
dcloherty@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

</div>

Dated: August 9, 2025

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing, on August 9, 2025.

<div style="margin-left: 45%;">

*/s/ Alexandra Arnold*
Alexandra Arnold

</div>