UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOBIZ, INC.; HARRIS BROTHERS OF MICHIGAN, INC.,<br><br>Defendants. | Civil Action No. 1:25-cv-11036-AK |

**REPLY IN SUPPORT OF DEFENDANT
HARRIS BROTHERS OF MICHIGAN, INC.'S MOTION TO DISMISS**

Defendant Harris Brothers of Michigan, Inc. ("Harris Brothers") respectfully submits this reply memorandum in support of its motion to dismiss Plaintiff Steven Novia's class action complaint in its entirety again Harris Brothers for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**A.    Novia has not established that Harris Brothers purposefully availed itself of the benefits and protections afforded by Massachusetts law.**

In his opposition, Novia argues that this Court may exercise specific jurisdiction over Harris Brothers because (1) Novia is a Massachusetts resident, and (2) the four text messages he allegedly received from Mobiz, Inc., advertising Harris Brothers auctions, were directed to his cell phone number, which has a Massachusetts area code of 617. *See* Dkt. No. 33 at 4; Novia Decl. at ¶ 2. But these facts, without more, are insufficient to establish that Harris Brothers purposefully availed itself of the benefits and protections afforded by Massachusetts law. As many federal courts have concluded, "[c]ell phones change matters. A cell phone may have an area code from a certain area, but a person could use that phone—or even live—in an entirely different area." *Spurling v. Wright*, 2022 WL 22287005, at *3 (S.D. Tex. Oct. 20, 2022); *see also*

1

*Frank v. Gold's Gym of N. Augusta, S.C.*, 2018 WL 3158822, at *3 (D. Minn. June 28, 2018) (concluding that "although [the defendant] sent text messages to phone numbers with Minnesota area codes, this is, by itself, insufficient to show that it 'uniquely or expressly aimed' its actions at Minnesota, because an area code is not a reliable indicator of residence") (internal citations omitted); *Cantu v. Platinum Mktg. Grp., LLC*, 2015 WL 13912331, at *4 (S.D. Tex. July 13, 2015) (holding that an area code is not a sufficient basis for finding minimum contacts because people increasingly keep their phone numbers "as they move from state to state, untethering the number's area code from its owner's state of residence"); *Sojka v. Loyalty Media LLC*, 2015 WL 2444506, at *3 (N.D. Ill. May 20, 2015) (stating that "a cell phone prefix, unlike a landline, is not dispositive of the residence, domicile or location of the cell phone owner"). These courts have accordingly concluded that to establish purposeful availment, a plaintiff must offer some evidence that the defendant knew where the plaintiff was located and specifically targeted that location. *See Spurling*, 2022 WL 22287005, at *4; *Frank*, 2018 WL 3158822, at *3; *Cantu*, 2015 WL 13912331, at *4; *Sojka*, 2015 WL 2444506, at *3.

Applying that analysis here, Novia has not established that Harris Brothers "purposefully and voluntarily direct[ed] [its] activities toward" Massachusetts, such that it "should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on these contacts." *U.S. Bank v. Swiss American Bank, Ltd.*, 274 F. 3d 610, 624 (1st Cir. 2001). Novia has introduced no evidence that Harris Brothers knew or should have known that he was located in Massachusetts, and the mere assertion that he received the text messages to a number with a Massachusetts area code is insufficient to establish purposeful availment. *See Spurling*, 2022 WL 22287005, at *3; *Frank*, 2018 WL 3158822, at *3; *Cantu*, 2015 WL 13912331, at *4; *Sojka*, 2015 WL 2444506, at *3. To find otherwise would be inconsistent with the Supreme Court's

direction that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Nor does Novia's affidavit, which purports to explain how he was harmed in Massachusetts, change this analysis: the fact that Novia allegedly received the text messages while he was in Massachusetts is irrelevant to purposeful availment, because "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Id.* at 290. Where Novia has presented no evidence connecting Harris Brothers' conduct to Massachusetts, this Court lacks personal jurisdiction over Harris Brothers.

Moreover, the cases that Novia cites in support of his position are all easily distinguishable. In *Traylor v. Livefree Emergency Response Inc.*, 2024 WL 4943042, at *2 (D. Mass. Dec. 3, 2024), the plaintiff received as many as seventeen robocalls to both his cell phone *and* his landline from a spoofed Massachusetts number. The plaintiff also purchased the product being sold on the robocalls, and the package was shipped to his home address in Massachusetts. *Id.* at *3. Similarly, in *McDermet v. Porch.com, Inc.*, 2019 WL 1619867, at *2 (D. Mass. Apr. 16, 2019), the plaintiff alleged that the defendant or its agents had called him multiple times on both his mobile *and* home phone numbers. By contrast, there is no allegation here that the texts Novia received came from a spoofed number to make it appear that they were being sent by a Massachusetts business. Nor did Novia receive any communications regarding Harris Brothers to a Massachusetts landline. Nor did Harris Brothers mail any product to a Massachusetts address.

Novia also appears to rely on *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002) and *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708 (1st Cir. 1996) in support of his argument that Harris Brothers is subject to this Court's jurisdiction because it

3

"directed its advertising into Massachusetts." Dkt. No. 33 at 8. Neither case is remotely applicable. *Daynard* involved extensive, ongoing, systematic contacts by the defendants with Massachusetts over multiple years, and communications that established apparent authority by the defendant for Massachusetts-based activities. *Daynard*, 290 F.3d at 46-48, 61-62. And in *Nowak*, the defendant's agent directly solicited Massachusetts businesses by sending a telecopy to Massachusetts, followed by multiple telecopy exchanges specifically negotiating Massachusetts reservations. *Nowak*, 94 F.3d at 211. The defendant also advertised in Massachusetts publications, sent promotional materials to Massachusetts residents, paid fees to be listed in travel guides targeting Massachusetts clients, and maintained ongoing correspondence to cultivate Massachusetts business. *Id.* Unlike those defendants, which actively cultivated business relationships with Massachusetts entities though direct and purposeful conduct, Novia has identified no such contacts here.

Novia's reliance on *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021), is even more misplaced. That case involved a defendant that had "systematically served a market" in the forum states through extensive advertising, dealer networks, and ongoing business relationships. The Supreme Court specifically noted Ford's "extensive" activities, including "billboards, TV and radio spots, print ads, and direct mail" targeted at forum residents. *Id.* In stark contrast, Harris Brothers has no offices, employees, advertising, or business activities in Massachusetts. The four text messages at issue represent "isolated events," *Aub v. Technicolor Entertainment Services*, 224 F. Supp. 2d 371, 373 (D. Mass. 2002), not the systematic market cultivation that *Ford* requires for this Court to exercise specific jurisdiction over Harris Brothers, 592 U.S. at 364–68.

In short, absent evidence that Harris Brothers knew that Novia was located within Massachusetts, the four text messages that Novia allegedly received to his cell phone are insufficient to establish that Harris Brothers has "minimum contacts" with Massachusetts. *Spurling*, 2022 WL 22287005, at *4 ("Absent allegations that the nonresident knew that the cell phone holder was located within the state, the nonresident lacks the requisite minimum contacts with the state"). And contrary to the cases Novia cites, he has failed to allege that Harris Brothers "engaged in additional purposeful conduct that shows the intent to serve the market of the forum state," *Sojka*, 2015 WL 2444506, at *2. This Court accordingly lacks personal jurisdiction over Harris Brothers.

### B.     Count II of the Complaint Fails to State a Claim

Novia's opposition also fails to rescue Count II of his complaint, which alleges a violation of 47 C.F.R. § 64.1601(e) (the "Caller ID Rule"). In response to the overwhelming weight of authority that Harris Brothers cited to in its opening brief rejecting a private right of action for the Caller ID Rule, *see* Dkt. No. 29 at 9-10, Novia points to just two cases: *Newell v. JR Cap., LLC*, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025), and *Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025). Both cases are in sharp conflict with the majority view and are flawed in their analysis.

In *Newell*, the court questionably concluded that the Caller ID Rule is a "network technology" meant to protect privacy and falls under 47 U.S.C. § 227(c), giving consumers the right to sue. 2025 WL 2004706, at *3. But in reaching this conclusion, the court entirely failed to grapple with the text of the regulation at issue, which states that caller identification information "must include either [calling party number] or [automatic number identification], and, *when available by the telemarketer's carrier, the name of the telemarketer*." 47 C.F.R. § 64.1601(e) (emphasis added). The court's analysis elides this critical requirement and mistakenly assumes

5

that the Caller ID Rule requires a business to include certain content in its text messages. *Id.* at *10 ("none of the texts include the name of the seller or telemarketer . . . as required [by the Caller ID Rule]"). That is not what the regulation requires: rather, it clearly ties the requirement that the telemarketer's name be transmitted to the question of whether that service is available from the carrier. *See* 47 C.F.R. § 64.1601(e). It is for that reason that the vast majority of courts have concluded that the Caller ID Rule "is a violation of technical and procedural standards under subsection *d*," for which no private right of action exists. *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *& (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017).

The *CHW Grp.* decision is also flawed, albeit for different reasons. There, the court stated, without analysis, that the Caller ID Rule could not have been promulgated under subsection *d* of the TCPA because that subsection applies only to "fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages." 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025). A multitude of courts have found otherwise, though, *see* Dkt. No. 29 at 9-10 (collecting cases), and the *CHW Grp.* court's paltry reasoning to the contrary is not persuasive.

Novia next fundamentally mischaracterizes Harris Brothers' position regarding the FCC's authority to issue regulations under the TCPA, claiming that Harris Brothers has argued "that Congress did not appropriately promulgate the Caller ID regulations." Dkt. No. 33 at 11. But Harris Brothers does not contend that the FCC lacks authority to promulgate technical standards or that no FCC regulation is privately enforceable. *See* Dkt. No. 29 at 9-11. Rather, it argues that Congress expressly limited private enforcement to violations of those regulations promulgated under subsections *b* and *c* of the TCPA, as reflected in 47 U.S.C. §§ 227(b)(3) and 227(c)(5). *Id.* As the vast majority of courts have found, the Caller ID Rule was promulgated pursuant to

subsection *d*—the statute's technical and procedural standards provision—which Congress did not make subject to a private right of action. *Id.* at 9-10 (collecting cases). Novia's theory, which would permit private enforcement of any TCPA regulation that advances "privacy," disregards the statutory framework and would eviscerate Congress's deliberate limitations.

Where the overwhelming majority of courts have correctly held that the Caller ID Rule was promulgated under subsection *d*, which does not provide a private right of action, this Court should follow the weight of precedent and dismiss Count II of Novia's complaint.

Respectfully submitted,

HARRIS BROTHERS OF MICHIGAN, INC

By its attorneys,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Daniel J. Cloherty (BBO #565772)
dcloherty@clohertysteinberg.com
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

Dated: September 11, 2025

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing, on September 11, 2025.

*/s/ Alexandra Arnold*
Alexandra Arnold