**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 25-CV-11036-AK |
| v. | ) ) | |
| MOBIZ, INC. AND HARRIS BROTHERS OF MICHIGAN, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON**
**MOBIZ' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Steven Novia ("Novia") brings a class action suit against Defendants Mobiz, Inc. ("Mobiz") and Harris Brothers of Michigan, Inc. ("Harris Brothers") for violations of the Telephone Consumer Protection Act, Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified as 47 U.S.C. § 227) ("TCPA") under the TCPA's do-not-call rule (Count I) and "telemarketing Caller ID" rule (Count II). [Dkt. 1 at 12-14]. Mobiz and Harris Brothers separately moved to dismiss. [Dkt. 18, 28]. Mobiz argues that Novia lacks standing to sue Mobiz, and Novia failed to state a claim for Count I and II against Mobiz. [Dkt. 19]. The Court will separately address Harris Brothers' Motion to Dismiss. For the following reasons, Mobiz' Motion to Dismiss [Dkt. 18] is **DENIED**.

I.    **BACKGROUND**

In February and March of 2025, Novia received four text messages from Mobiz' telephone number, which solicited Novia to purchase products from Harris Brothers' auctions.

1

[Dkt. 1 ¶¶ 25-26, 30].  Novia received the text messages on his residential telephone number, which begins with the Massachusetts area code "617." [Id. ¶ 19].  Novia resides in Massachusetts and received the texts while physically present in Massachusetts. [Id. ¶¶ 4, 8].  Mobiz "actually sent the text messages at issue into this District." [Id. ¶ 8].

Harris Brothers is a Michigan-based corporation that owns an auction house in Byron, Michigan. [Id. ¶6].  Harris Brothers hired Mobiz as a text message marketer to advertise their goods and services. [Id. ¶¶ 42-43].  Harris Brothers drafted the content of the text messages and provided Mobiz with the "specific criteria and demographics of individuals it desired to target and required Mo[b]iz to adhere to those criteria." [Id. ¶ 44].  The content of the text messages—and goods being sold—changed: Harris Brothers were selling "Coins & Currency" on February 14, 2025, "Guitars . . . Toys & Antiques" on March 7, 2025, and were holding a "Comic Book Auction" at some date thereafter. [Id. ¶¶ 25, 30].  Harris Brothers could have refrained from using Mobiz' services and could have chosen to fire Mobiz but did not. [Id. ¶¶ 41, 47-48].

On April 19, 2025, Novia filed suit against Mobiz and Harris Brothers alleging that they violated two of TCPA's implementing regulations: 47 C.F.R. 64.1200(c)(2) by calling someone who registered their phone on the National Do Not Call Registry (Count I) and 47 C.F.R. § 64.1601(e)(1) by failing to transmit caller ID information with the messages (Count II). [Dkt. 1].  Mobiz filed a Motion to Dismiss [Dkt. 18] raising Fed. R. Civ. P. 12(b)(1) and 12(b)(6) challenges regarding standing and failure to state a claim upon which relief can be granted. [Dkt. 19].

## II.    DISCUSSION

### A.  Standing

Mobiz challenges Novia's standing to bring this action under Rule 12(b)(1).  Since federal courts are courts of limited jurisdiction and this Court must be assured of its jurisdiction before reaching the merits of Novia's claims, the Court turns first to Mobiz' argument that Novia lacks standing. Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020).  A motion under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  Such a motion may present either a sufficiency or a factual challenge. See id. at 363.  As Mobiz does not challenge Novia's factual allegations, the Court "must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in [his] favor, and dispose of the challenge accordingly." Valentin, 254 F.3d at 363.[1]

The Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1.  For a "case or controversy" to exist, a plaintiff must be able to demonstrate a "personal stake in the outcome of the controversy." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  To meet the "constitutional minimum" standing requirements, a plaintiff must establish they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Def. of Wildlife, 504 U.S. 555, 560-61 (1992)).

---

[1] Mobiz admits that the Court can consider jurisdictional facts alleged in Novia's affidavit. [Dkt. 29 at 9].

Mobiz only challenges whether Novia experienced an injury in fact sufficient to confer standing.  To allege an injury in fact, plaintiffs must show they have suffered an "invasion of a legally protected interest" that was "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 339 (quoting Lujan, 504 U.S. at 560).  In Spokeo, Inc. v. Robins, the Supreme Court clarified that particularization and concreteness requirements are separate inquiries. 578 U.S. 330, 339 (2016).  An injury is particularized when it affects "the plaintiff in a personal and individual way." Id. (quoting Lujan, 504 U.S. at 560 n.1).

An injury is concrete when it is "real," rather than "abstract." Id. at 340.  Though tangible injuries may be easier to recognize, "intangible injuries can nevertheless be concrete." Id.  When considering whether an intangible injury is concrete, courts look to "both history and the judgment of Congress." Id.  Congress' creation of a cause of action is "instructive and important" "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id. at 341.  The Spokeo Court clarified that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and a "plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. at 342.  In support of these propositions, the Court cited cases in which the plaintiffs alleged that the defendants did not provide them with information to which they were entitled. Id. (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998) and Pub. Citizen v. Dep't of Just., 491 U.S. 440, 449 (1989)).

Here, Novia has alleged the type of individualized and concrete injury that gives this Court standing to address his caller ID claim.  First, Novia's alleged injury is particularized. Novia alleges that the lack of caller ID on the texts undermined his trust in the source of the texts, made it difficult for him to identify "who was attempting to solicit me [and] whom to ask

4

to stop," and made him waste time by checking the texts, rather than immediately knowing that they were spam. [Dkt. 25-1 ¶¶ 6-9, 11]. Each of these harms are individualized because they specifically relate to the lack of caller ID's effect on Novia.

Second, Novia's claims are concrete. Like the cases cited by the Supreme Court in Spokeo, Novia alleges that Mobiz did not provide him with information to which he was entitled. Specifically, Section 64.1601(e) requires telemarketers to transmit their charge number, automatic numbering information, and "when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1). In lieu of the telemarketer's information, texts may provide "the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number." Id. Novia alleged that Defendants did not provide this information, and, as a result, his trust in the source of his texts was undermined, he wasted time, and he had challenges identifying the sender. While these injuries are not significant, there is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be. See United States v. SCRAP, 412 U.S. 669, 689 n.14 (1973) ("identifiable trifle" sufficient injury to establish standing).

Mobiz alleges that Novia did not experience any harm because Harris Brothers was identified as the sender in the text messages. This argument does not address the injury Novia experienced by having to waste time checking the text messages. Further, Harris Brothers' number was not included in the text, as required under Section 64.1601(e). Although Harris Brothers' website link was included in the text, "this puts the onus – and risk of being the target of malware and phishing scams – on the recipient of the text," if the recipient wants to contact the sender. Newell v. JR Cap., LLC, 791 F. Supp. 3d 571, 584 (E.D. Pa. 2025). "This stands in

5

contrast with the clear purpose of the TCPA to protect consumers from nuisance calls and protect consumer privacy." Id. (citing S. Rep. 102-178, at 5 (1991)).

Though this case presents a close call, Mobiz' other objections are similarly unconvincing.  Mobiz alleges that Novia did not know about the texts' technical non-compliance until Novia's attorney investigated the issue.  This ignores Mobiz' non-technical non-compliance that would have been readily noticeable to Novia, including that the texts did not include the Harris Brothers' telephone number.  Accordingly, Novia has standing to allege a violation of Section 64.1601.

### B.  Failure to State a Claim: Do Not Call Registry

Mobiz seeks to dismiss Novia's claim under the Do Not Call Regulations for failure to state a claim upon which relief can be granted, arguing that Novia fails to allege that Mobiz "initiated" the text messages as required by the TCPA. [Dkt. 19].  However, Novia sufficiently alleged that Mobiz is directly liable for a TCPA violation because the complaint asserts that Mobiz actually sent the text messages.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Legal conclusions "couched" as factual allegations are disregarded. Id.  In evaluating a Rule 12(b)(6) motion, a court may consider "documents incorporated by reference into the complaint, public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  Reading the complaint "as a whole," the court undertakes a context-specific, two-step inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, it separates factual allegations from conclusory legal statements, accepting the former as

true and disregarding the latter. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, it determines whether the well-pleaded facts permit a "reasonable inference that the defendant is liable for the misconduct alleged." Haley, 657 F.3d at 46 (citation omitted). If the facts alleged are sufficient to state a cause of action, the motion to dismiss must be denied. Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021).

Under the TCPA's relevant implementing regulation, "[n]o . . . entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). "Thus, to be held directly liable" under Section 64.1200(c)(2), Mobiz "must be the one who 'initiate[d]' the" text messages to Novia. Golan v. FreeEats.com, Inc., 930 F.3d 950, 960 (8th Cir. 2019). "'[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call.'" Doane v. Python Leads, 2025 WL 3485569, at *8 (D. Mass. Dec. 4, 2025) (quoting In re DISH Network, LLC, 28 FCC Rcd. 6574, 6583 (2013)). To determine whether a defendant that provides software applications or platforms for calling "initiate[d]" calls for TCPA purposes, courts examine: "1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7980 (2015), rev'd in part by ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018). Plaintiffs plausibly assert that an entity takes the steps necessary to physically place a telephone call, thereby initiating the call, where they non-summarily allege that it actually made the call. See Cunningham v. Foresters Fin. Servs., Inc., 300 F. Supp. 3d 1004, 1014 (N.D. Ind. Jan. 9, 2018) (holding that "the [c]omplaint fail[ed] to allege a TCPA claim against the [defendant] under the direct liability

7

theory" where "the [c]omplaint d[id] not allege that the [defendant] made any telephone calls."); Nunes v. Twitter, Inc., 194 F. Supp. 3d 959, 962 (N.D. Cal. July 1, 2016) (ruling that the TCPA claim survived summary judgment where the defendant "[wa]s the actual sender of the text.").

An entity is so involved in placing the call as to be deemed to have initiated it, if they "decided whether, when, and to whom to send the text messages." Meeks v. Buffalo Wild Wings, Inc., No. 17-CV-07129-YGR, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018). Cf. Cacho v. McCarthy & Kelly LLP, 739 F. Supp. 3d 195, 213–14 (S.D.N.Y. July 3, 2024) (holding defendant did not initiate the call because it hired a telemarketing company to send the texts on its behalf) (citation omitted).  For example, in Meeks, the court held that Defendant Buffalo Wild Wings initiated text messages to the plaintiff, rather than the platform through which the texts were sent, because Buffalo Wild Wings decided whether to send the texts, obtained plaintiff's cell phone number, and chose when to send the texts.  2018 WL 1524067, at *4.  In contrast, the court in Nunes held that Twitter initiated text messages because Twitter chose to send a text to the plaintiff's phone number, even though another party wrote the texts. 194 F. Supp. 3d at 962.

Novia alleges that "Mo[b]iz . . . actually sent the text messages at issue into this District." [Dkt. 1 ¶ 8].  This allegation is sufficient to establish that Mobiz took the steps necessary to physically place the call.  Reading the complaint in the light most favorable to Novia, Harris Brothers was not so involved in the texting process to establish that it initiated the texts rather than Mobiz.  Although Harris Brothers created a script and provided demographic criteria for the texts' recipients, Mobiz plausibly had the discretion to decide which numbers to text, when to text them, or how often to text. See Meeks, 2018 WL 1524067, at *4.  Accordingly, Novia has sufficiently alleged that Mobiz initiated the text messages in violation of 47 C.F.R. § 64.1200(c)(2).

### C. Failure to State a Claim: Caller ID Requirement

Regarding the alleged violation of the caller ID regulations, Novia argues that Section 64.1601(e)'s caller ID requirement for all telemarketing calls was promulgated pursuant to Section 227(c), which contains a private right of action. Meanwhile, Mobiz argues it was promulgated pursuant to Section 227(d), which does not contain a private right of action. [Dkt. 19]. Mobiz' claims require assessment under the Rule 12(b)(6) standard. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 56 (1st Cir. 2002).

"[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Where a statute contains a private right of action, its implementing regulations may be enforced pursuant to that private right of action. Id. at 284 ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well."). "The question [of] whether a statute creates a cause of action" is "a matter of statutory construction." Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979). As with interpreting any statutory provision, the inquiry must "begin with the language of the statute itself." Id. at 16.

### 1. Textual Analysis

Section 227(c) authorizes the FCC to promulgate rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This includes "evaluat[ing] . . . methods and procedures . . . including . . . telephone network technologies . . . for their effectiveness in protecting such privacy rights." 47 U.S.C. § 227(c)(1)(A). In addition, Section 227(c) enables regulations "to implement methods and procedures for protecting the privacy rights" and

9

authorized the creation of the Do-Not-Call registry and database. 47 U.S.C. § 227(c)(3)-(4).[2] Meanwhile, Section 227(d) authorizes rules related to "technical and procedural" standards for fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message." 47 U.S.C. § 227(d)(2)-(3).  By the plain text of the TCPA and the Code of Federal Regulations, Section 64.1601(e) was promulgated pursuant to Section 227(c).

Section 64.1601(e)'s caller ID requirement is a "telephone network technolog[y]." 47 U.S.C. § 227(c)(1)(A). See Dobronski v. Selectquote Ins. Services, 773 F. Supp. 3d, 373, 377 (E.D. Mich. 2025) ("Intuitively, a caller ID requirement seems to use a telephone network technology to help protect privacy rights."); Dobronski v. Ins. Supermarket Inc., No. 23-10149, 2025 WL 3121332, at *14 (E.D. Mich. Aug. 1, 2025).  Further, the caller ID rule protects individuals' privacy rights by allowing them to screen calls to "avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1)(A).  Because Section 64.1601(e)'s caller ID requirement addresses the privacy protecting goal of Section 227(c) through one of the means permitted by Section 227(c), Section 64.1601(e) was implemented pursuant to Section 227(c). See Ins. Supermarket Inc., 2025 WL 3121332, at *14.  Cf. Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020) ("§ 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights," and thus "§ 64.1200(d) was promulgated under § 227(c) and contains a private right of action."); Menin v. Star Markets Co., Inc., No. 23-CV-11918-DJC, 2024 WL 4123522, at *2 (D. Mass. Sep. 9, 2024) (same).

Additionally, the expansive language of Section 64.1601(e) pairs with Section 227(c)'s broad purpose to protect residential telephone subscribers' privacy rights. See Selectquote, 773 F.

---

[2] Contrary to Mobiz' framing [Dkt. 19 at 16-17], Section 227(c) does not exclusively relate to the Do-Not-Call registry.

Supp. 3d at 377 ("The last remaining option—and the only subsection with the breadth of scope to cover § 64.1601(e)—is § 227(c)."); Worsham v. LifeStation, Inc., No. 661, Sep. Term, 2020, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021) ("[T]o the extent the express terms of § 64.1601(e)(1) apply to live telemarketing calls, they would exceed the scope of regulation authorized by § 227(d), but not the scope of § 227(c)."); Newell, 791 F. Supp. 3d at 579. Section 64.1601(e) fits within Section 227(c)'s scope and addresses its purpose through one of its enumerated means. Accordingly, Section 64.1601(e) was promulgated pursuant to Section 227(c), and Novia has a cause of action to enforce Section 64.1601(e). See also Barton v. Am. Fam. Life Assurance Co. of Columbus, No. 3:25-CV-05671-TMC, 2026 WL 177598, at *7 (W.D. Wash. Jan. 22, 2026) (agreeing with the reasoning in Newell and Selectquote); Barton v. Bright Solar Mktg. LLC, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025) (same).

In contrast, the scope of Section 227(d) differs from Section 64.1601(e)'s reach. Section 227(d) permits regulations of specific enumerated technologies. 47 U.S.C. § 227(d)(2)-(3). Section 64.1601(e) regulates "[a]ny person or entity that engages in telemarketing" and does not mention any of the technologies at issue in Section 227(d). 47 C.F.R. § 64.1601(e); see Selectquote, 773 F. Supp. 3d at 376 ("Section [] 64.1601(e) imposes a caller ID requirement on *all* telemarketing calls."). Given the differing scopes of Section 227(d) and Section 64.1601(e), "[i]t is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority." Newell, 791 F. Supp. 3d at 579; see Selectquote, 773 F. Supp. 3d at 376 ("It is thus unclear from where in [Section 227(b) and 227(d)] the FCC gained authority to create a blanket requirement applying to all calls, including

11

those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages.").

Although Section 64.1601(e)'s caller ID rule is a technical requirement and Section 227(d) calls for the creation of "technical and procedural" standards, Section 64.1601(e) was not promulgated pursuant to Section 227(d).  Section 227(c) does not specify whether its implementing regulations must be technical or not. 47 U.S.C. § 227(c)(1)(A).  Therefore, the FCC was within its authority to impose the technical requirement of Section 64.1601(e). See Newell, 791 F. Supp. 3d at 579 ("[C]aller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well.").

Mobiz argues that the Court should not infer a private right of action where Congress has already created enumerated causes of action in neighboring subsections. [Dkt. 27 at 8].  Contrary to Defendants' claim, the Court is not inferring a private right of action: Congress created an express cause of action under Section 227(c) and Section 227(c)'s implementing regulation may be enforced pursuant to that cause of action. Sandoval, 532 U.S. at 284.  The key inquiry here is the scope of the explicit cause of action. Selectquote, 773 F. Supp. 3d at 380 ("[The question] is instead whether, as a matter of textual interpretation, § 64.1601(e) falls within the scope of an express cause of action that Congress has already created."); Newell, 791 F. Supp. 3d at 580 ("Congress specifically authorized the FCC to issue regulations, and provided for a private right of action for all regulations issued under § 227(c).").  As explained above Section 64.1601(e) falls within Section 227(c)'s scope.  Mobiz' counterarguments accordingly fail.

### 2. Administrative History

Although not necessary to the Court's conclusion, the administrative history supports this Court's reading of the TCPA and its implementing regulation's text. See Obduskey v. McCarthy & Holthus LLP, 586 U.S. 466, 477 (2019) ("[F]or those of us who use legislative history to help interpret statutes, the history of the [Fair Debt Collection Practices Act] supports our reading."). In an early rulemaking proceeding, the FCC "considered whether to require telemarketers to use a special area code or telephone number prefix that would allow consumers to block unwanted telephone solicitations using a caller identification (caller ID) service." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14118–21 (2003); see Selectquote, 773 F. Supp. 3d at 377 (citing In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8758 (1992)).  When evaluating those alternatives, "the FCC identified the lack of widespread caller ID as a barrier to cost-effective network technology implementation." Selectquote, 773 F. Supp. 3d at 377.

A decade later, the FCC revisited the issue and "sought comment on whether network technologies have been developed over the last decade that may allow consumers to avoid receiving unwanted telephone solicitations." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14118 (2003).  Specifically, the FCC requested comments on "whether to require telemarketers to transmit the name and telephone number of the calling party, when possible, or prohibit them from blocking or altering the transmission of such information." Id.  Following the notice and comment process, the FCC promulgated Section 64.1601(e), which "require[s] all sellers and telemarketers to transmit caller ID information, regardless of their calling systems." Id. at 14121.

FCC's reference to "network technologies" is plainly a reference to the requirements of Section 227(c). See 47 U.S.C. § 227(c) (the FCC shall "compare and evaluate alternative methods and procedures (including . . . telephone network technologies . . . ) for their effectiveness in protecting such privacy rights."). The FCC's specific request for comment on caller ID requirements as one possible "network technology" makes apparent that the FCC considered caller ID requirements a "network technology" under Section 227(c). See Newell, 791 F. Supp. 3d at 579 ("[T]he administrative record establishes that the FCC viewed caller ID as a 'network technology' that Congress required the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c)."). Thus, the administrative history of Section 64.1601(e) supports this Court's textual analysis.

In support of their argument, Mobiz string-cites a series of out-of-circuit cases, without further explanation, that held there was no private right of action to enforce Section 64.1601(e). [Dkt. 19 at 11]. Granted, there is a split in authority on this issue. Compare Worsham v. Travel Options, Inc., No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sep. 2, 2016), and Dobronski v. Tobias & Assocs., No. 23-CV-10331, 2023 WL 7005844, at *7-8 (E.D. Mich. Sep. 25, 2023), and Dobronski v. SunPath Ltd., No. 19-13094, 2020 WL 8840311, at *6-7 (E.D. Mich. July 27, 2020), with Newell, 791 F. Supp. 3d at 582, and Selectquote Ins., 773 F. Supp. 3d at 380. However, upon review of Mobiz' persuasive authority, the Court remains unconvinced.

The only case that Mobiz addresses in detail is Travel Options. In that case, the court held that Section 64.1601(e) was not promulgated pursuant to Section 227(c) or its neighbor Section 227(b) because "neither . . . requires the use of such technology to accomplish their respective purposes." Travel Options, 2016 WL 4592373, at *4. The Court has already rejected this argument above. Travel Options also reasoned that "the FCC's rule in § 64.1601(e) appears

14

to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." Id.  However, this argument conflicts with Supreme Court precedent, which permits the private enforcement of regulations when the regulation is promulgated pursuant to—and thus in support of—a statute with a cause of action.  Furthermore, Section 64.1601(e) merely supporting Section 227(c)'s purpose of protecting telephone subscribers' privacy rights does not infer that it was not promulgated by Section 227(c). Selectquote, 773 F. Supp. 3d at 378 ("[I]t does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s 'telephone network technologies' language merely because it could also protect subscriber privacy rights in other, non-technological ways.").

Accordingly, the Court rejects Mobiz' arguments.  The TCPA and its regulations' text and administrative history support the Court's holding that Section 64.1601(e) was promulgated pursuant to Section 227(c), which contains a private right of action.

## III.    CONCLUSION

For the foregoing reasons, Mobiz' Motions to Dismiss [Dkt. 18] is **DENIED**.

**SO ORDERED.**

Dated: March 17, 2026                                    /s/ Angel Kelley

                                                        Hon. Angel Kelley
                                                        United States District Judge

15