**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| STEVEN NOVIA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 25-CV-11036-AK |
| v. | ) ) | |
| MOBIZ, INC. AND HARRIS BROTHERS OF MICHIGAN, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER ON**
**HARRIS BROTHERS' MOTIONS TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Steven Novia ("Novia") brings a class action suit against Defendants Mobiz, Inc. ("Mobiz")[1] and Harris Brothers of Michigan, Inc. ("Harris Brothers") for violations of the Telephone Consumer Protection Act, Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified as 47 U.S.C. § 227) ("TCPA") under the TCPA's do-not-call rule (Count I) and "telemarketing Caller ID" rule (Count II). [Dkt. 1 at 12-14]. Harris Brothers and Mobiz separately moved to dismiss. [Dkts. 18; 28]. The Court previously denied Mobiz' Motion to Dismiss. [Dkt. 35]. Harris Brothers argued that this Court lacks personal jurisdiction over it and Novia failed to state a claim for Count II against it. [Dkt. 29]. For the following reasons, Harris Brothers' Motion to Dismiss [Dkt. 28] is **DENIED**.

---

[1] The Court has adopted Mobiz' spelling of its own name, with a lower case "b," rather than the capitalized "B" utilized in Harris Brothers' papers.

## I.     BACKGROUND

As alleged in the Complaint, in February and March of 2025, Novia received four text messages from Mobiz' telephone number, which solicited Novia to purchase products from Harris Brothers' auctions. [Dkt. 1 ¶¶ 25-26, 30].  Novia received the text messages on his residential telephone number, which begins with the Massachusetts area code "617." [Id. ¶¶ 8, 19].  Novia resides in Massachusetts and received the texts while physically present in Massachusetts. [Id. ¶¶ 4, 8].  Mobiz "actually sent the text messages at issue into this District." [Id. ¶ 8].

Harris Brothers is a Michigan-based corporation that owns an auction house in Byron, Michigan. [Id. ¶ 6].  Harris Brothers hired Mobiz as a text message marketer to advertise their goods and services. [Id. ¶¶ 42-43].  Harris Brothers drafted the content of the text messages and provided Mobiz with the "specific criteria and demographics of individuals it desired to target and required Mo[b]iz to adhere to those criteria." [Id. ¶ 44].  The content of the text messages— and goods being sold—changed: Harris Brothers was selling "Coins & Currency" on February 14, 2025, "Guitars . . . Toys & Antiques" on March 7, 2025, and were holding a "Comic Book Auction" at some date thereafter. [Id. ¶¶ 25, 30].  Harris Brothers could have refrained from using Mobiz' services and could have chosen to terminate Mobiz' services but did not. [Id. ¶¶ 41, 47-48].

On April 19, 2025, Novia filed suit against Mobiz and Harris Brothers alleging that they violated two of TCPA's implementing regulations: 47 C.F.R. § 64.1200(c)(2) by calling someone who registered their phone on the National Do Not Call Registry (Count I) and 47 C.F.R. § 64.1601(e)(1) by failing to transmit caller ID information with the messages (Count II). [Dkt. 1 at 12-14].  Harris Brothers filed a Motion to Dismiss [Dkt. 28] raising Fed. R. Civ. P. 12(b)(2)

and 12(b)(6) challenges regarding personal jurisdiction and failure to state a claim upon which relief can be granted. [Dkt. 29 at 1].

## II.    DISCUSSION

### A.  Personal Jurisdiction

Harris Brothers challenges the exercise of personal jurisdiction over them. [Dkt. 29 at 1]. When determining whether a nonresident defendant is subject to its jurisdiction, a federal court exercising personal jurisdiction conducts a two-step analysis. Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 720 (1st Cir. 1991).  First, courts must determine whether the state's long arm statute authorizes it to exercise personal jurisdiction over the foreign defendant. Id. Second, if jurisdiction is authorized, courts must determine whether the exercise of personal jurisdiction is consistent with due process under the Fourteenth Amendment. Id. (citing Whistler Corp. v. Solar Elecs., Inc., 684 F. Supp. 1126, 1129-31 (D. Mass. 1988)).

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citations omitted).  The prima facie standard instructs this Court to "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  The party asserting personal jurisdiction, the plaintiff, bears the burden of proving personal jurisdiction. Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)).

### 1. Agency

Plaintiff alleges that the Court has personal jurisdiction over Harris Brothers by virtue of Mobiz' actions as Harris Brothers' agent. "For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." Daynard, 290 F.3d at 55. An agency relationship for purposes of personal jurisdiction is determined with reference to "[t]raditional common law concepts." Id. at 56. The "essential question . . . is whether the relationship between [the defendants], however it is labeled, is sufficient to attribute [one defendant's] in-state contacts with [the other defendant] to exercise jurisdiction that comports with due process." Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 240 (D. Mass. 2012) (citations omitted). The relationship is sufficient where there is "an actual or apparent agency relationship" between the defendants. Id. at 240-41 (citing Daynard, 290 F.3d at 53-54). An actual agency relationship is (1) "a product of 'mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal,'" and is (2) "subject to the principal's control." CNE Direct, Inc. v. Blackberry Corp., 821 F.3d 146, 150 (1st Cir. 2016) (quoting Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000)).

Novia alleges that "Harris Brothers . . . contracted with Mo[b]iz to send text messages into this District." [Dkt. 1 ¶ 8]. An allegation that the principal and agent formed a contractual agreement to the principal's benefit demonstrates mutual consent. See Focused Impressions, Inc. v. Sourcing Grp., LLC, No. 19-CV-11307, 2020 WL 1235366, at *4 (D. Mass. Mar. 13, 2020) (finding the third-party complaint demonstrated mutual consent where it "allege[d] that [the principal] entered into a contract with [the agent] for the express purpose of having [the agent] serve as 'a relationship manager.'"); Bud's Goods & Provisions Corp. v. Doe, No. 22-CV-40002,

2023 WL 2696587, at *3 (D. Mass. Mar. 29, 2023) ("[A] formal agency agreement can be dispositive. . . .").

Mobiz was subject to Harris Brothers' control.  In the TCPA context, control over the agent exists where the principal "had the right to control the 'manner and means' of the calls, including by developing a call script." Doane v. Benefytt Techs., Inc., No. CV 22-10510, 2023 WL 2465628, at *9 (D. Mass. Mar. 10, 2023) (citing Toney v. Quality Res., Inc., 75 F. Supp. 3d 727, 743-44 (N.D. Ill. 2014)); see Johansen v. Liberty Mut. Grp., Inc., No. 15-CV-12920, 2017 WL 6045419, at *3 (D. Mass. Dec. 6, 2017).  Harris Brothers developed the scripts for the text messages and instructed Mobiz which demographics of individuals to contact, controlling both who to contact (the manner) and how to contact them (the means).  Harris Brothers also exercised control in choosing to use Mobiz' services and maintaining the authority to terminate Mobiz should it have acted in a way that Harris Brothers disapproved of.  Furthermore, Harris Brothers' control over Mobiz continued beyond the onset of the contract: from at least February 14 to March 7, the content of the text messages changed, indicating a continuation of control extending weeks beyond the initial hiring. See Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 138-39 (E.D.N.Y. Feb. 17, 2015) ("[T]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.") (citing Restatement (Third) of Agency § 1.01 cmt. f(1) (Am. L. Inst. 2006)).  Accordingly, Mobiz acted as an agent for Harris Brothers, and thus Mobiz' contacts with Massachusetts can be imputed to Harris Brothers for the statutory and constitutional analyses.

### 2. Massachusetts Long Arm Statute

Turning to the personal jurisdiction analysis, under the Massachusetts long arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth" or "(c) causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a), (c) (1985). This Court can exercise personal jurisdiction over Harris Brothers under both subsections.

### a. Transacting Business Subsection

Pursuant to Subsection (a), "the defendant must have transacted business in Massachusetts" (the transacting business clause), and the plaintiff's "claim must have arisen from the transaction of business by the defendant" (the arisen from clause). Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994)). Courts construe the transacting business clause "broadly" and "look to whether the defendant attempted to participate in the Commonwealth's economic life." QLS Logistic Servs., LLC v. JAWS Assocs., LLC, No. 17-CV-11891, 2018 WL 5816342, at *3 (D. Mass. Nov. 6, 2018) (quoting Geis v. Nestlé Waters N. Am., Inc., 321 F. Supp. 3d 230, 238 (D. Mass. 2018)).

Under the transacting business clause, even a singular advertisement sent from the defendant to the plaintiff suffices to meet Subsection (a) where it "target[s] directly a market in Massachusetts" as "part of a national or regional advertising campaign." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 65 (D. Mass. 2001). Here, Mobiz sent four texts over the course of two months, on Harris Brothers' behalf, advertising their auction products to a Massachusetts area code telephone number as part of an en masse campaign. That is all that is needed to meet

Subsection (a)'s transacting business clause. See Tatro, 625 N.E.2d at 552 (finding that accepting a hotel reservation from a Massachusetts resident by telephone was sufficient to meet Massachusetts' long arm statute because the singular contact was a part of a larger attempt to acquire business in Massachusetts).

Under the arisen from clause, the claim must have been "made possible by, or lie[] in the wake of, the transaction of business in the forum State." Tatro, 625 N.E.2d at 553 (citations omitted). In this context, a but-for analysis governs. Id. at 553-54. Here, but for Mobiz' repeated text messages sent to Novia, he would not have been harmed by the TCPA violation. See Sigros, 129 F. Supp. 2d at 63 (finding that the plaintiff's "injury clearly 'arose from' [the defendant's] act of reserving a room at [a hotel] because 'but for' that contact she would not have been injured."). Accordingly, this Court can assert personal jurisdiction over Harris Brothers under Subsection (a).

Harris Brothers argues that "the four messages received by Novia are insufficient to constitute 'transacting business' in Massachusetts," citing Droukas v. Divers Training Academy Inc., 376 N.E.2d 548 (Mass. 1978) and Stanton v. AM Gen. Corp., 735 N.E.2d 407 (Mass. App. Ct. 2000) as support. [Dkt. 29 at 4-5]. But Droukas dealt with one print advertisement in a publication which was distributed to multiple states, including Massachusetts. 376 N.E.2d at 549-551. In contrast, the four text messages at issue in this suit were sent directly to Novia's phone in Massachusetts. Further, in Stanton, the plaintiff did not sufficiently allege that his injuries arose from the defendant's business in Massachusetts. 735 N.E.2d at 409. Whereas Novia alleges that Harris Brothers' intentional solicitation of Massachusetts business is the direct cause of his injury. Accordingly, Harris Brothers' counterargument is unavailing.

### b. Tortious Conduct Subsection

This Court can also exercise personal jurisdiction under Subsection (c).  Under Subsection (c), a Massachusetts "court may exercise personal jurisdiction over a person, who acts . . . by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(c) (1985).  To meet Subsection (c), "the act or omission must be intentional, rather than negligent, and must be targeted at, but not necessarily occur in, Massachusetts." Doane v. Python Leads, LLC, No. 24-CV-12947, 2025 WL 3485569, at *3 (D. Mass. Dec. 4, 2025) (citing Lyons v. Duncan, 81 Mass. App. Ct. 766, 770 (2012)).  A TCPA violation constitutes an injury in the state where the plaintiff received the text or call. See, e.g., Russell v. 29 Prime, Inc., No. 13-CV-12814, 2014 WL 3510291, at *1, 3 (D. Mass. July 10, 2014) (finding that the defendant "need not be present in Massachusetts to . . . cause injury therein" where the plaintiff, a Massachusetts resident, received several solicitations from autodialers while in Massachusetts).

Novia has sufficiently demonstrated that Harris Brothers intentionally caused tortious injury in Massachusetts.  Harris Brothers acted intentionally: they hired Mobiz to send the text messages, drafted the messages themselves, and informed Mobiz whom to contact based upon particular demographics, which plausibly included geographic requirements.  Harris Brothers' intentional conduct targeted Massachusetts because, through their agent, Harris Brothers contacted a number with a Massachusetts area code.  Further, Novia's alleged injury occurred in Massachusetts because Novia received the texts while present in Massachusetts.  Therefore, under both Subsection (a) and (c), this Court satisfies Massachusetts' long arm statute requirements for personal jurisdiction.

### 3. Due Process

Turning to the constitutional analysis, a court may assert specific jurisdiction over a defendant where the cause of action "relates sufficiently to, or arises from" the defendant's contacts with the forum state. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted). The specific jurisdiction analysis addresses three elements: (1) relatedness, (2) purposeful availment, and (3) reasonableness. See Warren Env't, Inc. v. Source One Env't, Ltd., No. 18-CV-11513, 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

### a. Relatedness

The relatedness prong requires that the "suit arise out of, or be related to" the defendant's contacts in the forum state to "ensure[] that the element of causation remains in the forefront." Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206-07 (1st Cir. 1994)). This requirement is assessed under "a flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) (citing Ticketmaster, 26 F.3d at 207)).

Harris Brothers' contacts in Massachusetts clearly relate to this suit. In the TCPA context, the relatedness requirement is met where a plaintiff's claims arise from a defendant's unsolicited calls to a Massachusetts resident's telephone number. See Jones v. Revenue Assistance Program, No. 15-CV-14017, 2016 WL 3919843, at *5 (D. Mass. July 14, 2016); Russell, 2014 WL 3510291, at *2 ("[The defendant's] mass solicitations to [the] plaintiff and other putative class members arose directly from that ongoing sales effort."). Novia challenges

Mobiz' unsolicited calls to him in Massachusetts, for Harris Brothers, allegedly in violation of the TCPA.  Accordingly, relatedness is met.

### b.  Purposeful Availment

Under the purposeful availment prong, courts assess whether the defendant intentionally and willingly directed their activities toward the forum, such that they should have expected to be subject to the forum court's jurisdiction because of their contacts and the benefits they had received. Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (citations omitted).  The exercise of personal jurisdiction is proper where a defendant "initiated the transaction" with the plaintiff and "contemplated that the plaintiff would render services in the forum." Daynard, 290 F.3d at 62 (citation omitted).  In the TCPA context, "repeated contacts targeted at Massachusetts residents, including calls alleged to be violations of the TCPA, can be considered purposeful availment by a defendant."[2] Traylor v. Livefree Emergency Response Inc., No. 24-CV-10329, 2024 WL 4943042, at *6 (D. Mass. Dec. 3, 2024); see McDermet v. Porch.com, Inc., No. 19-CV-10284, 2019 WL 1619867, at *2 (D. Mass. Apr. 16, 2019) ("[T]he Complaint alleges that [the defendant] or its agents called [the plaintiff's] mobile and home phone numbers that have a Massachusetts area code (978), an allegation sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth." (citations omitted)). Given Harris Brothers' limited contacts with Massachusetts, this poses a close case. Nonetheless, Harris Brothers, through their agent, repeatedly texted Novia at a number with a Massachusetts area code.  Thus, Harris Brothers targeted a Massachusetts resident and plausibly contemplated that Novia would be a customer in Massachusetts, purposefully availing itself of the privileges of conducting activities in Massachusetts.

---

[2] Text messages constitute calls under the TCPA. Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016).

Harris Brothers counterargues that "Novia d[id] not allege . . . that Harris Brothers directed Mo[b]iz to place calls to or to target Massachusetts residents or Massachusetts area codes." [Dkt. 29 at 7-8].  However, Novia alleged that Harris Brothers provided Mobiz with "specific criteria and demographics of individuals it desired to target and required Mo[b]iz to adhere to those criteria." [Dkt. 1 ¶ 44].  Reading the Complaint in Novia's favor, these criteria could plausibly include a geographic criterion.  Therefore, Harris Brothers purposefully availed itself of the privileges of conducting activities in Massachusetts.

### c.  Reasonableness

With the relatedness and purposeful availment prongs met, the Court must confirm that its exercise of personal jurisdiction over Harris Brothers would not be "fundamentally unfair" under the Fourteenth Amendment's Due Process Clause. Ticketmaster, 26 F.3d at 210.  The reasonableness prong is a sliding scale: where the relatedness and purposeful availment prongs are easily met, less weight is given to the reasonableness requirement. See id.  When assessing reasonableness, courts weigh the Gestalt factors: (1) the burden of appearance for the defendant, (2) the forum state's interest in adjudication, (3) the plaintiff's interest in acquiring convenient relief, (4) the administration of justice, and (5) relevant policy arguments. See Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

First, no facts in the record indicate that the burden of appearance for Harris Brothers would be particularly high, weighing in favor of reasonableness. See Nowak, 94 F.3d at 711 (holding the first Gestalt factor weighed in favor of reasonableness where the defendant did not demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."); Pritzker, 42 F.3d at 64 ("[W]e think this

[first] factor is only meaningful where a party can demonstrate some kind of special or unusual burden." (citing Ticketmaster, 26 F.3d at 210)).

The second factor also weighs in favor of personal jurisdiction because the TCPA violation occurred in Massachusetts. Compare Ticketmaster, 26 F.3d at 211 ("The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders." (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984))), and Python, 2025 WL 3485569, at *7 ("Massachusetts has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") (internal quotation marks omitted), with Sawtelle, 70 F.3d at 1395 ("New Hampshire has a far less compelling interest in the prosecution of a legal malpractice suit stemming from an injury that occurred outside of its borders.").

The third factor weighs in Novia's favor because he has an interest in requiring convenient relief in the state where he currently resides. See Sawtelle, 70 F.3d at 1395 ("This Court has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." (citations omitted)); Russell, 2014 WL 3510291, at *4 ("Such deference is particularly strong where . . . [the] plaintiff is a forum resident.").

"As in most litigation among private parties, the [fourth factor] in this case is a wash." Russell, 2014 WL 3510291, at *4 (citing Sawtelle, 70 F.3d at 1395); see Nowak, 94 F.3d at 711 (stating the administration of justice factor is usually "a wash"(citations omitted)). Finally, "[u]nder the [fifth] factor, Massachusetts has a clear interest in providing a convenient forum to residents who are harmed by out-of-forum actors." Russell, 2014 WL 3510291, at *4 (citing Nowak, 94 F.3d at 719). Because the reasonableness factors weigh in Novia's favor, Novia's

12

claims are related to Harris Brothers' actions, and Harris Brothers purposefully availed itself to Massachusetts, exercising personal jurisdiction over Harris Brothers comports with due process requirements.

### B. Failure to State a Claim: Caller ID Requirement

Regarding the alleged violation of the caller ID regulations, Novia argues that Section 64.1601(e)'s caller ID requirement for all telemarketing calls was promulgated pursuant to Section 227(c), which contains a private right of action. Meanwhile, Harris Brothers argues it was promulgated pursuant to Section 227(d), which does not contain a private right of action. [Dkt. 29 at 10]. Harris Brothers' claims require assessment under the Rule 12(b)(6) standard. See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 56 (1st Cir. 2002). Under that standard, courts accept the plaintiff's factual allegations as true, and determine whether the facts permit a reasonable inference that the defendant is liable for the alleged misconduct. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

"[P]rivate rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Where a statute contains a private right of action, its implementing regulations may be enforced pursuant to that private right of action. Id. at 284 ("A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well."). "The question [of] whether a statute creates a cause of action" is "a matter of statutory construction." Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979). As with interpreting any statutory provision, the inquiry must "begin with the language of the statute itself." Id. at 16.

### 1. Textual Analysis

Section 227(c) authorizes the FCC to promulgate rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).  This includes "evaluat[ing] . . . methods and procedures . . . including . . . telephone network technologies . . . for their effectiveness in protecting such privacy rights." 47 U.S.C. § 227(c)(1)(A).  In addition, Section 227(c) enables regulations "to implement methods and procedures for protecting the privacy rights" and authorized the creation of the Do-Not-Call registry and database. 47 U.S.C. § 227(c)(2)-(4).  Meanwhile, Section 227(d) authorizes rules related to "technical and procedural" standards for fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message." 47 U.S.C. § 227(d)(2)-(3).  By the plain text of the TCPA and the Code of Federal Regulations, Section 64.1601(e) was promulgated by Section 227(c).

Section 64.1601(e)'s caller ID requirement is a "telephone network technolog[y]." 47 U.S.C. § 227(c)(1)(A). See Dobronski v. Selectquote Ins. Servs., 773 F. Supp. 3d 373, 377 (E.D. Mich. 2025) ("Intuitively, a caller ID requirement seems to use a telephone network technology to help protect privacy rights."); Dobronski v. Ins. Supermarket Inc., No. 23-CV-10149, 2025 WL 3121332, at *14 (E.D. Mich. Aug. 1, 2025).  Further, the caller ID rule protects individuals' privacy rights by allowing them to screen calls to "avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).  Because Section 64.1601(e)'s caller ID requirement addresses the privacy-protecting goal of Section 227(c) through one of the means permitted by Section 227(c), it was implemented pursuant to Section 227(c). See Selectquote, 773 F. Supp. 3d at 377; Ins. Supermarket Inc., 2025 WL 3121332, at *14.  Cf. Rosenberg v. LoanDepot.com

LLC, 435 F. Supp. 3d 308, 324-25 (D. Mass. 2020) ("§ 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights," and thus "§ 64.1200(d) was promulgated under § 227(c) and contains a private right of action."); Menin v. Star Markets Co., No. 23-CV-11918, 2024 WL 4123522, at *2 (D. Mass. Sep. 9, 2024) (same).

Additionally, the expansive language of Section 64.1601(e) pairs with Section 227(c)'s broad purpose to protect residential telephone subscribers' privacy rights. See Selectquote, 773 F. Supp. 3d at 376 ("The last remaining option—and the only subsection with the breadth of scope to cover § 64.1601(e)—is § 227(c)."); Worsham v. LifeStation, Inc., No. 661, Sep. Term, 2020, 2021 WL 5358876, at *17 (Md. Ct. Spec. App. Nov. 17, 2021) ("[T]o the extent the express terms of § 64.1601(e)(1) apply to live telemarketing calls, they would exceed the scope of regulation authorized by § 227(d), but not the scope of § 227(c)."); Newell v. JR Cap., LLC, 791 F. Supp. 3d 571, 579 (E.D. Pa. 2025). Section 64.1601(e) fits within Section 227(c)'s scope and addresses its purpose through one of its enumerated means. Accordingly, Section 64.1601(e) was promulgated pursuant to Section 227(c), and Novia has a cause of action to enforce Section 64.1601(e). See also Barton v. Am. Fam. Life Assurance Co., No. 25-CV-05671, 2026 WL 177598, at *7 (W.D. Wash. Jan. 22, 2026) (agreeing with the reasoning in Newell and Selectquote); Barton v. Bright Solar Mktg. LLC, No. 25-CV-05310, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025) (same).

In contrast, the scope of Section 227(d) differs from Section 64.1601(e)'s reach. Section 227(d) permits regulations of specific enumerated technologies. 47 U.S.C. § 227(d)(1)-(3). On the other hand, Section 64.1601(e) regulates "[a]ny person or entity that engages in telemarketing" and does not mention any of the technologies at issue in Section 227(d). 47 C.F.R. § 64.1601(e); see Selectquote, 773 F. Supp. 3d at 376 ("Section [] 64.1601(e) imposes a

caller ID requirement on *all* telemarketing calls."). Given the differing scopes of Section 227(d) and Section 64.1601(e), "[i]t is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority." Newell, 791 F. Supp. 3d at 579; see Selectquote, 773 F. Supp. 3d at 376 ("It is thus unclear from where in [Section 227(b) and 227(d)] the FCC gained authority to create a blanket requirement applying to all calls, including those that do not relate to automatic dialing, fax machines, or artificial or prerecorded messages.").

Although Section 64.1601(e)'s caller ID rule is a technical requirement and Section 227(d) calls for the creation of "technical and procedural" standards, Section 64.1601(e) was not promulgated pursuant to Section 227(d). Section 227(c) does not specify whether its implementing regulations must be technical or not. 47 U.S.C. § 227(c)(1). Therefore, the FCC was within its authority to impose the technical requirement of Section 64.1601(e). See Newell, 791 F. Supp. 3d at 579 ("[C]aller ID fits into § 227(c), even if (c) does not mandate that the FCC adopt technological methods and authorizes non-technological methods and procedures as well.").

Harris Brothers argues that the Court should not infer a private right of action where Congress has already created enumerated causes of action in neighboring subsections. [Dkt. 29 at 10-11]. Contrary to Harris Brothers' claim, the Court is not inferring a private right of action: Congress created an express cause of action under Section 227(c) and Section 227(c)'s implementing regulation may be enforced pursuant to that cause of action. Sandoval, 532 U.S. at 284. The key inquiry here is the scope of the explicit cause of action. Selectquote, 773 F. Supp. 3d at 380 ("[The question] is instead whether, as a matter of textual interpretation, § 64.1601(e) falls within the scope of an *express* cause of action that Congress has already created."); Newell,

16

791 F. Supp. 3d at 580 ("Congress specifically authorized the FCC to issue regulations, and provided for a private right of action for all regulations issued under § 227(c)."). As explained above, Section 64.1601(e) falls within Section 227(c)'s scope. Harris Brothers' counterargument accordingly fails.

### 2. Administrative History

Although not necessary to the Court's conclusion, the administrative history supports this Court's reading of the TCPA and its implementing regulation's text. See Obduskey v. McCarthy & Holthus LLP, 586 U.S. 466, 477 (2019) ("[F]or those of us who use legislative history to help interpret statutes, the history of the [Fair Debt Collection Practices Act] supports our reading."). In an early rulemaking proceeding, the FCC "considered whether to require telemarketers to use a special area code or telephone number prefix that would allow consumers to block unwanted telephone solicitations using a caller identification (caller ID) service." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14118–21 (2003); see Selectquote, 773 F. Supp. 3d at 377 (citing In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8758 (1992)). When evaluating those alternatives, "the FCC identified the lack of widespread caller ID as a barrier to cost-effective network technology implementation." Selectquote, 773 F. Supp. 3d at 377.

A decade later, the FCC revisited the issue and "sought comment on whether network technologies have been developed over the last decade that may allow consumers to avoid receiving unwanted telephone solicitations." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14118 (2003). Specifically, the FCC requested comments on "whether to require telemarketers to transmit the name and telephone number of the calling party, when possible, or prohibit them from blocking or altering the

17

transmission of such information." Id.  Following the notice and comment process, the FCC promulgated Section 64.1601(e), which requires "all sellers and telemarketers to transmit caller ID information, regardless of their calling systems." Id. at 14121; 47 C.F.R. 64.1601(e).

FCC's reference to "network technologies" is plainly a reference to the requirements of Section 227(c). See 47 U.S.C. § 227(c) (the FCC shall "compare and evaluate alternative methods and procedures (including . . . telephone network technologies . . . ) for their effectiveness in protecting such privacy rights.").  The FCC's specific request for comment on Caller ID requirements as one possible "network technology" makes apparent that the FCC considered Caller ID requirements a "network technology" under Section 227(c).  See Newell, 791 F. Supp. 3d at 579 ("[T]he administrative record establishes that the FCC viewed caller ID as a 'network technology' that Congress *required* the FCC to evaluate as a method and procedure to protect consumer privacy under § 227(c).").  Thus, the administrative history of Section 64.1601(e) supports our textual analysis.

In support of their argument, Harris Brothers string-cites a series of out-of-circuit cases, without further explanation, that held there was no private right of action to enforce Section 64.1601(e). [Dkt. 29 at 9-10].  Granted, there is a split in authority on this issue. Compare Worsham v. Travel Options, Inc., No. 14-CV-2749, 2016 WL 4592373, at *4, 7 (D. Md. Sep. 2, 2016), and Dobronski v. Tobias & Assocs., No. 23-CV-10331, 2023 WL 7005844, at *7-8 (E.D. Mich. Sept. 25, 2023), and Dobronski v. SunPath Ltd., No. 19-CV-13094, 2020 WL 8840311, at *6-7 (E.D. Mich. July 27, 2020), with Newell, 791 F. Supp. 3d at 582, and Selectquote, 773 F. Supp. 3d at 380.  However, upon review of Defendants' persuasive authority, the Court remains unpersuaded.

18

The only case that Harris Brothers addresses in detail is <u>Travel Options</u>.  In that case, the court held that Section 64.1601(e) was not promulgated pursuant to Section 227(c) or its neighbor Section 227(b) because "neither . . . requires the use of such technology to accomplish their respective purposes." <u>Travel Options</u>, 2016 WL 4592373, at *4.  The Court has already rejected this argument above.  <u>Travel Options</u> also reasoned that "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." <u>Id.</u> However, this argument conflicts with Supreme Court precedent, which permits the private enforcement of regulations when the regulation is promulgated pursuant to—and thus in support of—a statute with a cause of action.  Furthermore, Section 64.1601(e) merely supporting Section 227(c)'s purpose of protecting telephone subscribers' privacy rights does not infer that it was not promulgated by Section 227(c). <u>Selectquote</u>, 773 F. Supp. 3d at 378 ("[I]t does not follow that the FCC could not promulgate technology-focused rules (like a caller-ID requirement) under § 227(c)'s 'telephone network technologies' language merely because it could also protect subscriber privacy rights in other, non-technological ways.").

Accordingly, the Court rejects Harris Brothers' arguments.  The TCPA and its regulations' text and administrative history support the Court's holding that Section 64.1601(e) was promulgated pursuant to Section 227(c), which contains a private right of action.

## III.    CONCLUSION

For the foregoing reasons, Harris Brothers' Motion to Dismiss [Dkt. 28] is **DENIED**.

**SO ORDERED.**

Dated: March 18, 2026                              /s/ Angel Kelley

                                                             Hon. Angel Kelley
                                                             United States District Judge

19